INTERNATIONAL HARVESTER CO. *v.*
HENDRICKSON MFG. CO.

5-5325                                                459 S. W. 2d 62

Opinion delivered October 26, 1970

*Wright, Lindsey & Jennings,* for appellant.

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellee.

FRANK HOLT, Justice. This is an appeal by International Harvester Company from a court order granting appellee Hendrickson Manufacturing Company's motion to quash summons and dismissing a third-party complaint against it.

Appellee, an Illinois corporation, is not qualified to do business in Arkansas and has no local agent for service. It manufactured and sold to appellant, a Delaware corporation authorized to do business in this state, a torque rod assembly which appellant utilized in the out-of-state construction of a truck. The truck was subsequently sold to Earl Pike by Burks Motors, Inc., an Arkansas corporation and distributor of appellant's products. Because of certain malfunctionings, the truck was returned three times to Burks Motors for servicing and repairs within the first few months after purchase. Finally an accident occurred on an Arkansas highway, allegedly caused by a defect in the torque rod assembly of the truck, which resulted in serious injury to Pike and property damages to his truck.

Appellant and Burks Motors were named co-defendants in a suit instituted by Pike. Subsequently, a third-party complaint was filed by appellant as third-party plaintiff against appellee as third-party defendant; and, thereupon, Pike amended his initial complaint to include appellee as a party defendant. Appellee appeared specially to contest jurisdiction. To facilitate a determination of that issue, appellant and appellee stipulated, in pertinent part, as follows:

\* \* \*

3. Hendrickson Manufacturing Company has not directly or by any agent transacted or solicited any business in the State of Arkansas, had an interest in, used or possessed any real property in the State of Arkansas; or contracted in the State of Arkansas to supply services or things.

4. The torque rod assembly on the tractor of Earl Pike that was involved in the accident out of which this litigation arises was sold by Hendrickson Manufacturing Company to International Harvester Company with knowledge on the part of Hendrickson Manufacturing Company that it would become a part of a completed vehicle.

5. A substantial number of trucks that are sold and used in the State of Arkansas contain component parts designed and manufactured by Hendrickson Manufacturing Company and this situation has existed for a number of years. Hendrickson Manufacturing Company derives revenue from the sale of component parts used in the manufacture of trucks by International Harvester Company and other manufacturers.

From these facts the trial court found that appellee was entitled to have its motion to quash summons granted and dismissed the third-party complaint. Hence this appeal.

For reversal appellant asserts that the stipulated facts bring appellee well within the jurisdictional ambit of our "long arm" statute, Ark. Stat. Ann. § 27-2502 (Supp. 1969). We must agree. Subsection C. 1. (d) of § 27-2502 provides:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's * * *

(d) causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct in this State or derives substantial revenue from goods consumed or services used in this State;

* * *

The stipulation specifically states that for the past several years a substantial number of trucks that are sold and used in Arkansas contain component parts designed and manufactured by appellee. From this it cannot be argued persuasively that appellee is not subject to extrastate service of process under the last quoted disjunctive condition for jurisdiction—*i. e.,* appellee derives substantial revenue from goods consumed in this state.

Appellee, however, insists that it has not established those "certain minimum contacts" with this forum so as to be subject to its jurisdiction without offending "traditional notions of fair play and substantial justice." *International Shoe Co.* v. *State of Washington,* 326 U. S. 310 (1945). This contention cannot be maintained. Our "long-arm" statute (§ 27-2502) is a component of the Uniform Interstate and International Procedure Act adopted by the legislature in 1963. It was specifically designed to authorize extrastate service of process in a manner consistent with the requirements of the due process clause of the federal constitution. See Leflar, *Act 101—Uniform Interstate and International Procedure Act,* 17 Ark. L. Rev. 118 (1963). The various conditions for extrastate jurisdiction which this statute outlines certainly do not raise any due process doubts.

Appellee calls attention to an express restriction in the rationale of *International Shoe Co.* v. *State of Washington, supra,* and *McGee* v. *International Life Ins. Co.,* 355 U. S. 220 (1957)—*i. e.,* that before a state can exercise such jurisdiction it is essential that there be a showing that the non-resident defendant purposefully availed itself of the privilege of conducting activities within the forum state. See *Pennsalt Chem.* v. *Crown Cork & Seal,* 244 Ark. 638, 426 S. W. 2d 417 (1968). However, see *In Personam Jurisdiction Over Nonresident Manufacturers in Product Liability Actions,* 63 Mich. L. Rev. 1028 (1965), where it was incisively observed:

[T]he fortuities of product migration do not always permit an automatic association of product location with a deliberate act of the manufacturer within the forum state. The movement of the product may have been effected by the consumer or by independent middlemen. Or, it may have resulted from the distribution of a secondary manufacturer who purchased the defendant's product as a component for his goods, the component proving to be the defective item, since the manufacturer over whom personal jurisdiction is sought may have had no control over the process by which his product reached the forum, the attribution to the nonresident of a purposefully instituted relationship becomes less meaningful. The language of *McGee* [*McGee* v. *International Life Ins. Co., supra*] and *Hanson* [*Hanson* v. *Denckla,* 357 U. S. 235 (1958)], which speak of contacts emanating directly from the defendant, seems inapposite where such intimacy is lacking. Therefore, fairness to the nonresident, within the meaning of *International Shoe* [*International Shoe. Co.* v. *State of Washington, supra*], must be formulated with reference to broader considerations when the presence of the product stems from a more circuitous route than direct shipment.

The rapid development of communication and transportation, the marked increase in specialization of commercial activity, and the growing interdependence of business enterprises have resulted in a redefining of due process with emphasis upon adequate notice and opportunity to defend rather than upon territorial limitations. See *Metal-Matic,. Inc.* v. *Eighth Judicial Dist. Court,* 415 P. 2d 617 (Nev. 1966) and *Gray* v. *American Radiator & Standard Sanitary Corp.,* 22 Ill. 2d 432, 176 N. E. 2d 761 (1961). Today, manufacturers rarely deal directly with consumers. Their products are often designed for sale and use in whatever markets may be found for them. Such nationwide markets make it likely that consumer injuries will occur in states far removed from the manufacturer's place of business. It has therefore been suggested that the use of such prod-

ucts in the ordinary course of commerce is sufficient contact with the forum wherein the injury occurred to justify its exertion of jurisdiction. *Gray* v. *American Radiator & Standard Sanitary Corp., supra.* See, also, *Anderson* v. *National Presto Industries, Inc.,* 257 Iowa 911, 135 N. W. 2d 639 (1965). In other words, the criteria for jurisdiction should be the more practical considerations of justice, convenience, and reasonableness in the particular case. It must be remembered that the standard of "fair play and substantial justice" is not to be utilized solely for the benefit of nonresident defendants, but rather it is an equal guarantee to consumer-plaintiffs of a just, convenient and reasonable forum in which to try their suit.

Reversed and remanded.