Woodrow HUTSON, Appellee,

v.

FEHR BROTHERS, INC., Appellee,

Acciaierie Weissenfels, Appellant.

John David EPPERSON, Appellee,

v.

FEHR BROTHERS, INC., Appellee,

Acciaierie Weissenfels, Appellant.

No. 77–1818.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1978.

Decided Aug. 18, 1978.

Stephenson, Circuit Judge, filed a dissenting opinion in which Lay and Heaney, Circuit Judges, joined.

Lay, Circuit Judge, filed a dissenting opinion in which Heaney, Circuit Judge, joined.

Richard O. Cunningham, Steptoe & Johnson, Washington, D. C., argued, for appellant; Randolph J. May and F. Joseph Nealon, Washington, D. C., and W. H. Arnold, III of Arnold, Arnold, Lavender & Rochelle, Texarkana, Ark., on brief.

Nicholas H. Patton of Young, Patton & Folson, Texarkana, Ark., argued for appellees and on brief, for appellees Huston and Epperson.

Laser, Sharp, Haley, Young & Huckabay, Little Rock, Ark., on brief, for appellee Fehr Bros.

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, and HENLEY, Circuit Judges, *En Banc.*

BRIGHT, Circuit Judge.

This permissive interlocutory appeal stems from the attempted exercise of *in personam* jurisdiction over a foreign corporation, by substituted service, under the Arkansas long-arm statute. Ark.Stat.Ann. § 27–2502(C)(1)(d) (Supp.1975). The United States District Court for the Western District of Arkansas denied defendant-appellant Acciaierie Weissenfels' motion to dismiss two suits seeking damages for alleged bodily injuries for lack of *in personam* jurisdiction. The court then made the appropriate 28 U.S.C. § 1292(b) certification upon motion of Weissenfels and we permitted the appeal to be taken. We reverse the district court.

I.

Plaintiffs Woodrow Hutson and John David Epperson, residents of Arkansas, filed separate related product liability actions seeking damages for injuries allegedly sustained on May 9, 1976. Named as defendants in these actions were Weissenfels, an Italian corporation with its principal place of business in Fusine, Valromana, Italy, and Fehr Brothers, Inc., a New York corporation with its principal place of business in New York City, New York.

In their complaints, plaintiffs contend that they were injured while working at the Murfreesboro Lumber Company in Murfreesboro, Arkansas, when a three-eighths inch chain broke. Murfreesboro Lumber Company purchased the chain from the Carroll Building and Appliance Company in Murfreesboro, Arkansas. The open barrel from which the chain was purchased allegedly bore the label FAIRLINE, the trademark used by defendant Fehr Brothers, Inc. It was also stamped "Yugoslavia."

Plaintiffs allege a complicated series of transactions linking Weissenfels to the chain in question. They claim that the chain was manufactured in Yugoslavia by

some unknown manufacturer. Weissenfels purchased the chain and then packaged and sold it as its own product to Frank Fehr & Co., a British corporation with the exclusive right to sell Weissenfels' products in North America. Frank Fehr & Co. resold the chain to its American subsidiary, Fehr Brothers, Inc. Fehr Brothers then repackaged the chain under its own brand name, FAIRLINE, and resold it. Ultimately, the chain reached the retailer, Carroll Building and Appliance Company, who sold the chain to the plaintiffs' employer, Murfreesboro Lumber Company. The plaintiffs also alleged in their complaints that between October 1, 1972, and September 30, 1976, Fehr Brothers, Inc., sold Weissenfels chains in Arkansas for a total revenue of more than $74,000.

In its reply, Weissenfels denies that it purchased or packaged this particular chain as its own product. Because this case is before us on appeal from a motion to dismiss for lack of personal jurisdiction, however, we must assume that the facts supporting jurisdiction in plaintiffs' complaints are true. This permits us to accept as true plaintiffs' allegation that Weissenfels was one link in the series of commercial transactions that brought the chain to Arkansas.

## II.

This appeal presents the following two issues: whether the Arkansas long-arm statute authorizes the exercise of jurisdiction over Weissenfels and, if so, whether the district court's exercise of *in personam* jurisdiction over Weissenfels would violate the due process clause of the fourteenth amendment.

## A.

The relevant provision of the Arkansas long-arm statute, Ark.Stat.Ann. § 27–2502(C)(1)(d), states:

1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

\*    \*    \*    \*    \*    \*

(d) causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct in this State or derives substantial revenue from goods consumed or services used in this State[.]

The statute establishes two requirements pertinent to this case: (1) that Weissenfels' acts or omissions outside of the state caused the tortious injury in Arkansas; (2) that Weissenfels derived "substantial revenue" from the sale of its chains in Arkansas.

■ The first of these requirements presents no great difficulty for, as we have already noted, we must accept as true the allegations in plaintiffs' complaints that the chain was repackaged and resold by Weissenfels. Under a products liability theory, the seller as well as manufacturer may be liable for injuries caused by defective products.

The revenue issue is more troublesome, however, because plaintiffs pleaded no facts indicating how much revenue is derived by Weissenfels from Arkansas sales. Instead, plaintiffs merely alleged that Fehr Brothers, the American subsidiary of Frank Fehr & Co., the British company, derived $74,-551.35 in revenue from Arkansas sales over a four-year period. Because Weissenfels is at least two steps removed from Fehr Brothers in the distribution chain, it is safe to assume that the $74,551.35 figure is diminished. Under applicable Arkansas case law, however, the revenue requirement is met. For example, the Arkansas Supreme Court in *Pennsalt Chemical Corp. v. Crown Cork & Seal Co.,* 244 Ark. 638, 426 S.W.2d 417, 419 (1968), held sales over a three-year period ranging from a high of $1,987.78 to a low of $123.60 to be "substantial revenue" under this statute.

■ Accordingly, Arkansas state law permits *in personam* jurisdiction over Weissenfels in this case.

## B.

We must still determine whether the exercise of *in personam* jurisdiction over this

foreign corporation would violate its right to due process under the fourteenth amendment.

■ In order to satisfy due process in cases in which service of process is accomplished by means of a long-arm statute, the foreign corporation must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In addition, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State * * *." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

The Supreme Court last term in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), discussed the applicable due process test for the exercise of personal jurisdiction over a foreign corporation:

Thus, the inquiry into the State's jurisdiction over a foreign corporation appropriately focused not on whether the corporation was "present" but on whether there have been

"such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." * * *

Mechanical or quantitative evaluations of the defendant's activities in the forum could not resolve the question of reasonableness:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." . .

Thus, the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of *Pennoyer* rest, became the central concern of the inquiry into personal jurisdiction. [*Shaffer v. Heitner,* 433 U.S. 186, 203–04, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977), *quoting International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (footnote omitted).]

The courts interpreting the *International Shoe* "minimum contacts"—fairness doctrine on occasion have tended to expand jurisdiction so as to include any corporation that

introduces its product into the stream of interstate commerce if it had reason to know or expect that its product would be brought into the state where the injury occurred * * *. [*Eyerly Aircraft Co. v. Killian,* 414 F.2d 591, 596 (5th Cir. 1969).]

Indeed, the court in *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), noted that jurisdiction is presumed unless the *defendant* can prove that the presence of the product in the forum state was an unforeseeable event. Nonetheless, the requirement of minimum contacts mandates some degree of concern for the interest of the nonresident defendant.

■ In this case, we cannot agree with the district court's conclusion that exercise of *in personam* jurisdiction over Weissenfels is consistent with constitutional due process requirements established by the Supreme Court in *International Shoe* and reiterated in *Shaffer.* The determination, for example, of whether the "minimum contacts" test of *International Shoe* is met is not an easy task. Indeed, as the Supreme Court recently emphasized:

[A]n essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State. *International Shoe Co. v. Washington,* [326

U.S. 310, 316–17, 319, [66 S.Ct. [154], at 158–159] 90 L.Ed. 95] (1945).] * * *

Like any standard that requires a determination of "reasonableness," the "minimum contacts" test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. *Hanson v. Denckla*, 357 U.S. 235, 246, [78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283] (1958). [*Kulko v. Superior Court of California*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978).]

In this case we are compelled to reach the conclusion that the requisite "affiliating circumstances" are not present. The connection between Arkansas and Weissenfels is an attenuated one.

Weissenfels' contacts with Arkansas consist only of the fortuitous introduction of Weissenfels products into the forum state through the decision of Frank Fehr & Co., a British company. Weissenfels neither manufactured the defective chain nor sold or marketed it in the United States. Weissenfels' only apparent connection with the chain was that at one time it repacked and resold it to Frank Fehr & Co. These are insufficient "minimal contacts" with the forum state for Arkansas to exercise jurisdiction over Weissenfels. Weissenfels did not consciously solicit or purposefully avail itself of the privilege to conduct business in the forum state, as *Hanson* requires for the exercise of jurisdiction. 357 U.S. at 253, 78 S.Ct. 1228. The Fehr Co. exercises control over the selection of the customers and other marketing decisions relating to the sales of the Weissenfels products which it purchases. We recognize that the State of Arkansas has a strong interest in providing a forum for its residents who are injured by defective products of foreign corporations [1] and that Weissenfels did repackage and resell the chain to Frank Fehr & Co. Nevertheless, *in personam* jurisdiction simply cannot rest on such a frail foundation.

Furthermore, we realize that the question of jurisdiction, which is relatively more concerned with fairness, is distinct from that of venue, which is more concerned with convenience. "Nevertheless, whatever will support the plea [of forum non conveniens] will excuse the corporation from defending the suit * * *," and can be considered in determining whether jurisdiction should be exercised. *Latimer v. S/A Industrias Reunidas F. Matarazzo*, 175 F.2d 184, 186 (2d Cir. 1949), *cert. denied*, 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531 (1949).

Various considerations usually associated with forum convenience are pertinent to whether Weissenfels should be subject to jurisdiction in Arkansas. Weissenfels is burdened substantially by having to defend this lawsuit. It must hire United States counsel and support personnel and presumably transport its witnesses to Arkansas from Italy in the event of trial. Naturally, it will be strongly tempted to settle, even if it believes it is not liable, because of the tremendous expense of trying the lawsuit, an expense that bears far more heavily on it than on the other parties.

We, therefore, conclude that Arkansas' exercise of jurisdiction over Weissenfels would offend the "traditional notions of fair play and substantial justice" standard established in *International Shoe*.

We reverse and remand, directing that Weissenfels be dismissed as a defendant.

STEPHENSON, Circuit Judge, with whom LAY and HEANEY, Circuit Judges, join, dissenting.

The dispositive issue in this case is whether Acciaierie Weissenfels (AW) is insulated from *in personam* jurisdiction under the due process clause of the Fourteenth Amendment in a product liability case because it used an intermediary in the sale and distribution of an alleged faulty chain causing plaintiffs' injuries. AW purchased the chain in question from an unknown Yugo-

---

1. We further note that plaintiffs in this action do not suffer from a dearth of available defendants. Arkansas has exercised jurisdiction over the packager and distributor, Fehr, and can exercise jurisdiction over the retailer, Carroll Building and Appliance Company.

slavian firm and then packaged and sold it as its own product[1] to Frank Fehr & Co., a British corporation with the exclusive right to sell AW's products in North America. Frank Fehr & Co. resold the chain to its American subsidiary, Fehr Brothers, Inc.

The district court in its memorandum opinion denying AW's motion to dismiss noted that AW relied on language in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), which was cited with approval in *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), to the effect that a defendant must have "purposely avail[ed] itself of the privilege of conducting activities within the forum State" to subject itself to personal jurisdiction. The district court then stated:

We hold that on the alleged facts of this case, the phrase "purposefully avails itself of the privilege of conducting activities" includes the actions of AW. We reach this result because AW's product which it allegedly packaged and warranted as its own is the subject matter of this litigation. In delivering the chain to Frank Fehr and Company, AW must have anticipated that the chain would be distributed in all fifty states of the United States and it must have foreseen that its product would be sold within Arkansas.

AW was not the entity which consummated the sale within Arkansas. If this fact were decisive and if a foreseeability test for "purposely avails itself" were not applied in products liability cases, an injured person would almost always be left with no direct recourse against the manufacturer of the product causing his injury.

The courts have recognized that direct contact with the forum state is not essential to the exercise of personal jurisdiction. So long as a manufacturer or distributor can reasonably anticipate that its products will be sold and distributed in a given state and through their use injury occur, it can be held to account through in personam jurisdiction. In *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1144 (7th Cir. 1975), the court of appeals made it abundantly clear that a court must look to the economic realities of the case.

To the extent that a corporate defendant avails itself of the privilege of conducting activities in a state, it enjoys the benefits and protection of the laws of that state, *International Shoe, supra*, 326 U.S. at 319, 66 S.Ct. 154, and we believe that Metz has done so by injecting its products into the Illinois marketplace. Metz urges that its activity does not fit this mold simply because its products are sold to EPOI "f. o. b. German seaport or German border," Appellee's Brief at 11, but that position is not, of course, a realistic evaluation of the nature and quality of Metz's business affairs, viewed in light of the arrangement with EPOI.

Direct contact with the forum state is not essential to the exercise of personal jurisdiction. Metz may not have physically entered the state of Illinois, but it placed its flash devices in the stream of commerce under such circumstances that it should reasonably have anticipated that injury through infringement would occur there. [Citations omitted.] We look to the economic and commercial realities of this case, and in our view, it is not within

---

1. It was so alleged by plaintiffs and assumed to be true under the motion to dismiss. *See* majority opinion, *supra*, at 835. We also note that Fehr Brothers, Inc. in response to an interrogatory admitted that periodically since 1972 it had distributed to Arkansas customers advertising brochures showing AW products. A sample first page thereof is attached to its brief and reads as follows:

ACCIAIERIE WEISSENFELS has been producing chains for over 500 years and is a pioneer in the technological development of chain. Our factory is equipped with the most

modern chain welding and heat treating equipment available and staffed by highly skilled workmen to whom chain making is a family tradition.
We welcome your inquiries for High Test and Special Alloy Steel Chains.

Exclusive Agents for U.S.A.

FEHR BROS. MANUFACTURES, Inc. 110, Wall Street

NEW YORK, N. Y. - 10005

FAIRLINE [trademark]

the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products.

It would be fundamentally unfair to allow a foreign manufacturer to insulate itself from the jurisdiction of the court through the use of an exclusive distributor. *Hetrick v. American Honda Motor Co.*, 429 F.Supp. 116, 118–19 (D.Neb.1976).

It is not essential to personal jurisdiction that AW knew that its product was being sold in Arkansas. It is enough that AW could reasonably anticipate that its product sold through an exclusive distributorship in North America might ultimately be used in any state of the United States and it would be held to answer in any such state for the damage the product caused. The manufacturer cannot deny the substantial interest of the injured person's state in providing a convenient forum for its citizens.

A corporation is answerable where it introduces its product into the stream of interstate commerce if it has reason to know or expect that its product would be brought into the state where the injury occurred. *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591, 595–96 (5th Cir. 1969). *Accord, Coulter v. Sears, Roebuck & Co.*, 426 F.2d 1315 (5th Cir. 1970); *Williams v. Vick Chemical Co.*, 279 F.Supp. 833, 837 (S.D.Iowa 1967). Where the activities complained of create a substantial risk of injury in the forum state, direct contact with that state is not essential. *Jones Enterprises, Inc. v. Atlas Service Corp.*, 442 F.2d 1136, 1140 (9th Cir. 1971); *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231, 235 (9th Cir. 1969).

The Supreme Court recognized that a single transaction is a sufficient contact for purposes of due process if it gives rise to the liability asserted in the suit. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The Court noted the trend "toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents" is in part attributable to the transformation of our national economy over the years. *Id.* at 222, 78 S.Ct. at 201.

> Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

*Id.* at 222–23, 78 S.Ct. at 201. *Compare Kulko v. Superior Court of California*, 436 U.S. 84, 96, 100–101, 98 S.Ct. 1690, 1699, 1701–02, 56 L.Ed.2d 132 (1978), where the Supreme Court noted that the transaction giving rise to the claim for personal jurisdiction was not a commercial transaction involving an economic benefit to the party that would make fair the assertion of the state's judicial jurisdiction.

A state has a legitimate interest in providing a meaningful forum for its citizens who have suffered damages as a result of faulty products being shipped into the state by foreign corporations. In *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976), the court stated:

> Modern transportation, communication, and the national flow of commerce have contributed to the recognition that states have a legitimate interest in providing means for their citizens to seek redress against foreign corporations that ship allegedly defective products into the state. No unconstitutional burden is imposed on a foreign corporation by requiring it to defend a suit in a forum located in a state where it has advertised and sold a product whose use gave rise to the cause of action.

We recognize that the inconvenience resulting to a foreign defendant in defending itself should not be ignored but where the defendant benefits from economic activity within the forum state and the cause of action arises out of such activity it is not

unfair to hold the defendant accountable in the courts of the forum. *Honeywell, Inc. v. Metz Apparatewerke, supra,* 509 F.2d at 1145; *Hetrick v. American Honda Motor Co., supra,* 429 F.Supp. at 119.

In summary, we are satisfied that AW has purposefully availed itself of the privilege of conducting activities within the forum state as required by *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. 1228. It is enough, as demonstrated by the record, that AW had reason to know that its products, traveling through an exclusive distributorship, could be sold in any state of the United States. Under the circumstances, we do not believe it is unreasonable to require Acciaierie Weissenfels to defend this product liability action in Arkansas. It is fundamentally unfair to allow a foreign manufacturer to insulate itself from the jurisdiction of the courts by use of an exclusive distributorship.

LAY, Circuit Judge, dissenting, in which HEANEY, Circuit Judge, joins.

I fully concur in Judge Stephenson's well-reasoned dissenting opinion. I wish to make an additional observation. If this action were pending in the state court it is clear under the Arkansas statute, Ark.Stat. Ann. § 27–2502(C)(1)(d)[1] that the Supreme Court of Arkansas would uphold the service of process on defendant Weissenfels. *See Nix v. Dunavant,* 249 Ark. 641, 460 S.W.2d 762, 764–65 (1970); *International Harvester Co. v. Hendrickson Mfg. Co.,* 249 Ark. 298, 459 S.W.2d 62, 64–65 (1970); *Pennsalt Chemical Corp. v. Crown Cork & Seal Co.,* 244 Ark. 638, 426 S.W.2d 417, 419–22 (1968). The majority's decision in effect declares unconstitutional that portion of the Arkansas statute which provides for service of process on a defendant that reaps financial gain from the distribution of its product in the state. This decision should create great concern to the vast majority of states that have sought to expand their long arm statutes to protect their citizens from defective products manufactured and distributed in their states by foreign corporations.

For many years state legislation restricted service of process to persons who were actively doing business in the state or who were otherwise physically present in the state. *See Developments in the Law— State-Court Jurisdiction,* 73 Harv.L.Rev. 909, 917 (1960). As the nation's industrialization rapidly expanded the practical realization grew that injured citizens were denied a convenient judicial forum to redress the tortious effect of foreign products shipped into the state. Following the decisions in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny, states began to amend their long arm statutes to expand their in personam jurisdiction over foreign corporations. These statutes were upheld as long as the exercise of jurisdiction did not offend traditional notions of fair play and substantial justice. Manufacturers were no longer allowed to disassociate themselves from their defective products shipped to distant points. *See generally,* Note, *In Personam Jurisdiction Over Nonresident Manufacturers in Product Liability Actions,* 63 Mich.L.Rev. 1028 (1965). Long arm statutes providing jurisdiction over a foreign corporation who committed a single tortious act have long withstood constitutional challenge.[2] I am aware of no other federal or state decision which is in accord with the restrictive holding set out today.

---

1. Arkansas long arm statute is identical to the Uniform Interstate & International Procedure Act § 1.03.

2. *See e. g., Sells v. International Harvester Co.,* 513 F.2d 762, 763 (5th Cir. 1975), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976); *Dawkins v. White Products Corp.,* 443 F.2d 589, 590–94 (5th Cir. 1971); *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761, 762–66 (1961); *Andersen v. National Presto Industries, Inc.,* 257 Iowa 911, 135 N.W.2d 639, 640–43 (1965); *Ehlers v. United States Heating & Cooling Mfg. Corp.,* 267 Minn. 56, 124 N.W.2d 824, 826–27 (1963). *Cf. Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir. 1965) (upheld service on foreign corporation stating that more than sufficient minimum contacts were present when injury resulted from defective product shipped directly into state).

It is somewhat surprising at this late date a *federal court* questions the efficacy of such legislation. Our holding today unduly encroaches upon a state's prerogative to provide its citizens a convenient avenue of recourse against a foreign tortfeasor. The majority circumvents this argument by saying that plaintiffs "do not suffer from a dearth of available defendants." This off-hand dismissal overlooks the sound judicial policy of encouraging the settlement of all claims arising out of the same core of operative facts in a single lawsuit.

The majority decision is a giant leap backward in the law.