TRACE X CHEMICAL, INC., a Corporation, Plaintiff,

v.

GULF OIL CHEMICALS COMPANY and Gulf Oil Corporation, Defendants, Third Party Plaintiffs.

C–I–L INC., Canadian Industries, Ltd. and C–I–L Ammunition, Inc., Defendants,

v.

John ARENS, Third Party Defendant.

No. 78–5010.

United States District Court, W. D. Arkansas, Fayetteville Division.

Aug. 6, 1981.

---

E. E. Maglothin, James B. Blair, Crouch, Blair, Cypert & Waters, Fayetteville, Ark., for plaintiff.

Jerry Lee Canfield, Daily, West, Core, Coffman & Canfield, Fort Smith, Ark., for Gulf Oil.

A. D. McAllister, Jr., McAllister & Wade, Fayetteville, Ark., for C–I–L, etc.

John F. Arens, pro se.

## MEMORANDUM ORDER

OVERTON, District Judge.

Before the Court is motion of defendants C–I–L Inc., Canadian Industries, Ltd. and C–I–L Ammunition, Inc. (collectively referred to as C–I–L) to dismiss the complaint and the third party complaint for lack of personal jurisdiction. C–I–L contends it has not shown sufficient contact with or conduct in the State of Arkansas to satisfy either the Due Process Clause of the Fourteenth Amendment or the Arkansas Long Arm Statute, Ark.Stat.Ann. § 27–2502, subsec. C.

The allegations of the amended complaint, the motion to dismiss with supporting affidavits, and plaintiff's response to the motion are basically as follows. Until near the end of 1976, the plaintiff, Trace X Chemical, Inc., had conducted a manufacturing business at Salina, Oklahoma, which included the making of fuses or detonaters containing trinitrotoluene (TNT). Trace X had obtained its supply of TNT through the defendant Gulf, which had merely served as a conduit from the manufacturer, C–I–L. (C–I–L is alleged to be the only producer of TNT in North America.) After some time, Trace X came to purchase a portion of its TNT supplies from C–I–L directly. This TNT was delivered to Oklahoma, where Trace X had its only plant.

In December, 1976, C–I–L was notified that Trace X would be moving its plant to Arkansas, and in January of the following year Trace X did open a plant in East Camden, Arkansas. Although "large quantities" of TNT had been shipped by C–I–L to Trace X in Oklahoma during 1976, only five truckloads were sent by C–I–L to the new Trace X plant in East Camden during February and March of 1977. The East Camden plant apparently closed in 1977, allegedly partly as a result of customer complaints about defective explosives which had originated with C–I–L.

Trace X complained to C–I–L on December 1, 1976, that it had received a defective batch of TNT which was of French origin. It is said that the explosives would not explode. Later, however, in February of 1977, Trace X apparently complained that the defective TNT was from the United Kingdom originally. C–I–L's records show all such TNT to which the complaints could have referred as having been shipped to Salina, Oklahoma. In March of 1977, Mr. Arens, who is president of Trace X, stated to officials of C–I–L his belief that the problem with his primers was a result of the defective French TNT. Apparently no

complaint was ever made as to the quality of the TNT shipped to East Camden in February and March, 1977.

As a result of Trace X's complaints, samples of the TNT in question were apparently tested by C–I–L. The tests showed the TNT to be of merchantable quality, and Trace X alleges it was told by C–I–L's officers to continue using the product. Presumably out of an abundance of caution, it is said that C–I–L encouraged Trace X to mix the TNT, which had by this time been carried from Oklahoma to East Camden, with "virgin" TNT, i.e., material which had subsequently been shipped from Canada and which was believed by all parties to be of good quality. This latter TNT seems to have been from the five shipments sent to East Camden by C–I–L in 1977. The original complaint did not allege, and the Court does not interpret the amended complaint as alleging, that any of the five truckloads of Canadian TNT sent to East Camden was defective. Though the amended complaint is perhaps vague on this point, the affidavit of Mr. Arens, attached to Trace X's response to the motion to dismiss, clarifies that the defective TNT was that of French origin. In March, 1977, Trace X had this product tested by the Rolla School of Mines, and was informed that it did contain impurities which would cause it to become non-explosive. This was, however, not until after Trace X had produced very many primers at the East Camden plant containing a mixture of the two batches of TNT based on the assurances by C–I–L as to the quality of the French shipment.

C–I–L argues that its only contact with Arkansas up to the time of this lawsuit was the shipment of five loads of TNT to East Camden in February and March of 1977. It did not own any property here, have any agents or officers here, maintain any records or bank accounts here, or regularly solicit business here. Therefore, it argues neither the Due Process Clause nor the Long Arm Statute allows it to be haled into court here. Ark.Stat.Ann. § 27–2502, subsec. C, provides:

"C. Personal jurisdiction based upon conduct.

1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

a. transacting any business in this state;

b. contracting to supply services or things in this State;

c. causing tortious injury in this State by an act or omission in this State;

d. causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct in this State or derives substantial revenue from goods consumed or services used in this State.

2. When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him."

It is urged that *Krone v. A M I, Inc.*, 367 F.Supp. 1141, 1143 (E.D.Ark.1973), and *Martin v. Kelley Electric Co.*, 371 F.Supp. 1225 (E.D.Ark.1974), (both per Henley, C. J.) require that the jurisdictional contact itself—here the five shipments in 1977—give rise to the cause of action. In other words, because of subsec. C(2), suit could only be brought in Arkansas based on a defect in one of the five shipments to Arkansas.

It should be noted that while C–I–L had minimal contacts with Arkansas prior to 1977, it has apparently enjoyed a plethora of business relationships here since 1977, at least according to the affidavit of Mr. Arens.

The Court does not quarrel with the correctness of Judge Henley's holdings in *Krone v. A M I, Inc., supra,* and *Martin v. Kelley Electric Co., supra.*[1] The disposi-

---

1. In *Martin*, jurisdiction was alleged on the basis of Subsec. C, par. 1(a), transacting business in the state, and par. 1(b), contracting to supply services or things in the state. In *Krone*

tive precedent for this case is *Pennsalt Chemical Co. v. Crown Cork & Seal Co.*, 244 Ark. 638, 426 S.W.2d 417 (1968). In *Pennsalt*, the Arkansas Supreme Court specifically rejected the contention that paragraph 2 of Subsec. C modifies paragraph 1(d). In reversing the trial court's order to quash summons, the Court said, "This interpretation places beyond jurisdictional reach of the statute those isolated transactions where the nonresident has no other contact with the state [citation omitted], but on the other hand recognizes that one who pursues a persistent course of conduct or otherwise derives substantial revenue from activities in this state will be liable for acts committed outside the state resulting in injuries in this state." 426 S.W.2d at 422. This case makes clear that the right to sue C–I–L in Arkansas for tortious conduct outside the state is not limited to the five shipments into the state in 1977, provided that C–I–L has engaged in a persistent course of conduct or derived substantial revenue from use of its goods here since 1977. It seems undisputed that from at least 1978 to the present C–I–L has engaged in a great deal of business with Arkansas firms. Moreover, that the complaint here sounds in warranty rather than negligence or strict liability does not remove it from the provisions of Subsec. C, par. 1(d) since the Court in *Pennsalt* found this paragraph "applies both to actions for breach of warranty and to actions in tort." 426 S.W.2d at 422. A finding that C–I–L is subject to suit in Arkansas squares not only with the precedent of *Pennsalt* but also with fairness and common sense. "[T]he criteria for jurisdiction should be the more practical considerations of justice, convenience, and reasonableness in the particular case." *International Harvester Co. v. Hendrickson Mfg. Co.*, 249 Ark. 298, 303, 459 S.W.2d 62 (1970). Here it offends common sense to argue the unfairness of C–I–L defending a suit in Arkansas with the number of contacts which C–I–L enjoyed with the state in the period just prior to filing of the amended complaint. These contacts are also more

than sufficient to satisfy the due process standard of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court, therefore, finds that it has personal jurisdiction over the defendant C–I–L; the motion to dismiss will be denied.

As an additional matter, the Court would direct the plaintiff's attention to the new Local Rule 3(e) and request, for our convenience, that plaintiff prepare and file a new amended complaint in compliance with this rule, even though the rule was not in effect at the time the amended complaint was filed.

---

also, the transacting business clause was alleged. At issue here, on the other hand, is the

par. 1(d), injury within the state/tortious conduct outside the state.