Joyce E. HUMBLE; Norman C. Humble; and Clark Humble, Stephen Humble, Jason Humble, and Sarah Humble, by their next friend and father, Norman C. Humble, Plaintiffs,

v.

TOYOTA MOTOR COMPANY, LTD.; Toyota Motor Sales, U.S.A., Inc.; Toyota Motor Distributors, Inc.; and Arakawa Auto Body Company, Ltd., Defendants.

No. C 82–10.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Dec. 21, 1982.

---

John L. Riccolo, James A. Piersall, Cedar Rapids, Iowa, for plaintiffs.

Wm. H. Carmichael, James R. Snyder, Roger W. Stone, Cedar Rapids, Iowa, for defendants.

## ORDER

McMANUS, Chief Judge.

This matter is before the court on defendant's resisted motion to dismiss filed March 15, 1982. Granted.

Plaintiffs brought this action for money damages allegedly arising out of an automobile accident involving a vehicle manufactured in whole or in part by defendants. The court has diversity jurisdiction over the subject matter by way of 28 U.S.C. § 1332. Defendant Arakawa Auto Body Company, Ltd. (Arakawa) seeks dismissal for lack of personal jurisdiction.

Arakawa is a Japanese corporation which manufactures front and back seats and their component parts for sale in Japan to Toyota Motor Company, Ltd. (TMC), a Japanese corporation. TMC installs the seats and component parts in automobiles which TMC manufactures in Japan. TMC then sells and exports some of those vehicles, under the Toyota nameplate, to Toyota Motor Sales USA, Inc. (TMS–USA), a California corporation. TMS–USA in turn sells such vehicles to various independently owned and operated wholesale distributing companies, or to Toyota Motor Distributors, Inc. (TMD) in those geographic sales areas of the United States in which there is no independently owned and operated wholesale distributing company. These wholesale distributors, TMD and others, then sell such vehicles to independent retail dealers for resale to the public. (See defendants' answers to plaintiffs' first set of interrogatories.)

The vehicle which is the subject of this litigation was imported to the United States by TMS–USA and sold to TMD. TMD resold the vehicle to an independent dealer in Utah, who, in turn, resold the vehicle to Antonio V. Gomez of Salt Lake City, Utah, on or about June 30, 1969. (See TMS–

USA's supplemental answer # 3 to plaintiff's first set of interrogatories.) Subsequently, on or about May 8, 1979, plaintiffs bought the vehicle for their use and on or about April 21, 1980, plaintiff, Joyce E. Humble, was involved in an accident in Cedar Rapids, Iowa, while operating the vehicle. (See Complaint.) Plaintiffs now claim that this court may assert jurisdiction over Arakawa because the vehicle involved in the accident contained seats manufactured in Japan by Arakawa.

■ Arakawa must have sufficient minimum contacts with Iowa so as to comply with the traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, the unilateral activity of a party who claims some relationship with a non-resident defendant will not satisfy the requirement of contact with the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). It is essential in each case that there be some act by which defendant purposely avails itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of that forum state's laws. *Id.* The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to subject the corporation to the jurisdiction of the forum state should be determined on a case by case basis. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

■ The Eighth Circuit has enumerated five factors to be considered in determining whether the above standards are satisfied:

1. The nature and quality of contacts of forum state;

2. The quantity of contacts with the forum state;

3. The relation of the cause of action to the contacts;

4. The interest of the forum state in providing a forum for its residents; and

5. The convenience of the parties.

*Aaron Ferer & Sons Co. v. Atlas Scrap Iron,* 558 F.2d 450, 453 (8th Cir.1977); *Caesar's World, Inc. v. Spencer Foods, Inc.,* 498 F.2d 1176, 1180 (8th Cir.1974).

■ Here, Arakawa is incorporated in Japan and is not licensed to do business, nor has it done business in the United States at any time relevant to this case. (April 26, 1982 affidavit of Junichi Sugiyama, Manager, Quality Assurance Department of Arakawa (Affidavit)). Arakawa has no office, affiliate, subsidiary, agent, employee, property, bank accounts, or business operations in the United States, including Iowa. *Id.* The only possible contacts that Arakawa could be said to have with the United States or Iowa are by way of the fact that TMS–USA and TMD sell automobiles in the United States and Iowa, containing parts manufactured in Japan by Arakawa. However, those autos are purchased from TMC, not Arakawa. The autos are manufactured in Japan and the component parts are manufactured to TMC's design and specifications. The contacts between Iowa and Arakawa are simply too fortuitous and tenuous to warrant the exercise of personal jurisdiction over Arakawa. *See, Insurance Co. of North American v. Marina Sailing Cruz,* 649 F.2d 1266 (9th Cir.1981); *Hutson v. Fehr Bros., Inc.,* 584 F.2d 833 (8th Cir.1978), *cert. denied,* 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 654 (1979); *Cascade Steel Rolling Mills, Inc. v. Itoh & Co. (America),* 499 F.Supp. 829, 840–842 (D.Or.1980). *Cf. Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir.1980).

In *Hutson v. Fehr Brothers, Inc.,* a products liability suit involving a defective chain, plaintiffs sought to exercise jurisdiction over Weissenfels, an Italian corporation. Weissenfels had purchased the chain from an unknown Yugoslavian manufacturer and repackaged it as its own product in Italy. Weissenfels then sold the chain to Frank Fehr & Co., a British corporation with the exclusive right to sell Weissenfels' products in North America. Frank Fehr & Co. resold the chain to its American subsidiary, Fehr Brothers, a New York corpora-

tion having its principal place of business in New York, which repackaged the chain under its own brand name and resold it. The chain eventually was sold to a retailer, who sold it to plaintiff's employer in Arkansas, where plaintiff was injured.

The court found that the connection between Weissenfels and Arkansas was an attenuated one and concluded that to exercise jurisdiction over Weissenfels would offend "the traditional notions of fair play and substantial justice." *Id.* at 837. The court noted that Weissenfels did not consciously solicit, or market its product in the United States. *Id.* The Fehr Co. exercised exclusive control over the selection of customers and other marketing decisions. Weissenfels had not purposely availed itself of the privilege of conducting business in Arkansas. *Id.* Moreover, Weissenfels would have been substantially burdened by having to defend the lawsuit in a foreign country. *Id.*

In *Oswalt v. Scripto, Inc.*, the court found personal jurisdiction over defendant Tokai-Seiki. Tokai-Seiki was a Japanese corporation that had absolutely no contacts with the United States except that it sold cigarette lighters to Scripto, Inc., an American company. Scripto sold the lighters pursuant to a distributorship agreement which made Scripto the exclusive distributor in the United States. The court found that by entering into the exclusive distributor agreement with Scripto, which included sales to "national retail outlets," Tokai-Seiki made efforts to serve indirectly the market for its product in Texas and other states. *Id.* at 200. Tokai-Seiki had reason to know or expect that its lighter would reach Texas and should have reasonably anticipated being haled into court in Texas. *Id.*

The result in this case can be justified by comparing it to *Hutson* and *Oswalt.*

Here, unlike *Oswalt*, there was no exclusive distributorship agreement, thus Arakawa did not have the same expectations as Oswalt. Furthermore as in *Hutson*, the initial sale here was between two foreign corporations. In *Oswalt*, the initial sale

was to an American company, with the result being that Oswalt directly placed its product into the stream of American commerce. In the instant case, it was TMC, not Arakawa who placed the product into commerce in this country.

In *Oswalt* the products involved were completed units. Here, the products were component parts which had to be installed and incorporated into a larger unit by TMC before they could be put to their intended use. The court does not doubt that Arakawa could have foreseen that its product would find its way into the United States and Iowa, however, it is doubtful that Arakawa could reasonably have anticipated being haled into court in Iowa. *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Arakawa has not advertised, solicited any business, or otherwise sought to serve any market in the United States. (Affidavit.) Arakawa has merely sold its products to TMC in Japan, pursuant to the specifications and design of TMC. The parts made by Arakawa comprise a small portion of the total product which bears the Toyota name. Although a significant portion of Arakawa's business is attributable to its sales with TMC, it would be manifestly unjust to require Arakawa to defend itself in a foreign country, *See Hutson*, 584 F.2d at 837, when the allegedly defective product has not been designed, marketed, or placed into the stream of American commerce by Arakawa.

It is therefore

ORDERED

Arakawa Dismissed.