**J. Neal WILSON and Mrs. John H. Wilson, Jr., Plaintiffs,**

v.

**Douglas L. LAMB and Lawrence G. Lamb, Defendants.**

**Civ. No. 86–2022.**

United States District Court, W.D. Arkansas, Fort Smith Division.

April 16, 1986.

Sam Sexton, Jr., Sexton, Nolan, Robb & Caddell, Fort Smith, Ark., for plaintiffs.

Donald B. Kendall and Stephen Lee Wood, Williams, Kendall, Schrantz & Wood, Rogers, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiffs, mother and son, citizens and residents of Sebastian County, Fort Smith, Arkansas, bring this action against defendants, father and son, citizens and residents of Wilson County, Kansas, alleging that they suffered certain damages by reason of the activities of the defendants which constituted the common law tort of fraud and fraud in the sale of securities, in violation of the Securities Exchange Act of 1934 and Rule 10–b5 promulgated by the Securities and Exchange Commission. It is also alleged, in Count II of the complaint, that defendants' activities violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.

It is alleged that plaintiff J. Neal Wilson and defendant Douglas L. Lamb were members of the Air National Guard, and were assigned to train together with a unit headquartered at Fort Smith, Arkansas. It is claimed that as a result of those contacts, plaintiff J. Neal Wilson and his mother, Mrs. John H. Wilson, Jr., invested in a speculative oil drilling operation run by the defendants in the state of Kansas. It is not clear from the complaint exactly when

the contacts in Arkansas were supposed to have taken place or the nature of them.

It is then alleged that certain activities on the part of the defendants constituted the common law tort of fraud and were in violation of the federal statutes cited above. It is claimed that certain written instruments were delivered to the plaintiffs and that the plaintiffs reasonably relied upon them, to their detriment, in that they invested a sum in excess of $25,000.00 for participation in two leases in Wilson County, Kansas. Actual damages of $24,000.00 are alleged, and by reason of the provisions of the RICO act, it is claimed that these damages should be tripled and that reasonable attorney's fees should be recovered. In addition, punitive damages of $100,-000.00 are prayed for.

The defendants filed a motion to dismiss "for lack of jurisdiction and improper venue." Subsequently, an affidavit executed by defendant Douglas Lamb was filed in which it was alleged, among other things, that:

13. In 1983, at the time of the alleged solicitations, my only connection with Arkansas was that I trained at Fort Smith, Arkansas, as a member of the Air National Guard. During that time, I never solicited from, or offered the sale of oil interests, leases, or stocks in Arkansas to Mr. Neal Wilson or Mrs. John H. Wilson, Jr.

14. Mr. Neal Wilson contacted me at my office in Benedict, Kansas, by telephone from Arkansas about investing in oil interests. Mr. Wilson said his mother had some money that she wanted to invest. I then mailed an agreement regarding the Dale Payne lease to the Wilsons. Under this agreement, the investors in the Payne lease were given the first option to invest in the Follmer lease. As a result of this contract provision I later contacted the Wilsons by mail concerning this option.

15. All contacts concerning the lease operations relative to either J. Neal Wilson or Mrs. John H. Wilson were handled by me. My father, Lawrence G. Lamb, had no contacts whatsoever with the Wilsons.

The attorney for the defendants has favored the court with an excellent brief setting forth the defendants' contentions in relation to jurisdiction and venue. Although the Rules for the United States District Courts for the Eastern and Western Districts of Arkansas give opposing counsel ten days from the date that a motion and supporting papers are filed upon him to file a concise statement in opposition to the motion, with supporting authorities and controverting affidavits if he desires to oppose it, plaintiffs' attorney has filed nothing in that regard, although more than ten days has elapsed. Because of the explicit provisions of Rule 20 in this respect, it might be assumed that plaintiffs' attorney has no desire to oppose the motion, and the court probably should grant the motion to dismiss for failure to comply with the rule. However, the court did not choose to take that course in this case, and has spent a considerable amount of time researching the "other side of the case," a function that should have been performed by defendants' attorney.

Defendants' motion to dismiss has two bases which are somewhat intertwined. They contend that the plaintiffs have not correctly alleged personal jurisdiction over them and that, in any event, the Western District of Arkansas is not the proper venue for this cause of action.

■ As to the personal jurisdiction argument, it is true that plaintiffs' complaint alleges almost no basis for personal jurisdiction over the defendants if jurisdictional tests for diversity cases apply such as that set forth in *World-Wide Volkswagen Corp., et al. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hutson v. Fehr Bros., Inc.,* 584 F.2d 833 (8th Cir. 1978); and *Mountaire Feeds, Inc. v. Agro Impex S.A.,* 677 F.2d 651 (8th Cir.1982). In this respect, the only allegation alleging any contacts whatsoever by either of the defendants with the state of Arkansas is that Douglas Lamb was assigned to train with a National Guard unit here. While it is alleged that the defendants "conceived a scheme, plan and design to enrich them-

selves at the expense of uninformed investors" and that the "targets selected to accomplish that purpose were the members of the Air National Guard unit at Fort Smith," there is no allegation whatsoever that anything complained of in the complaint took place in Arkansas. There are allegations that certain documents containing certain material misrepresentations were prepared and "circulated." There is no allegation even that such were "circulated" within Arkansas. It is alleged that "each of the written instruments referred to in this complaint were delivered to the plaintiffs and the plaintiffs reasonably relied upon the statements made therein to their harm and injury." It is not alleged that such instruments were delivered to the plaintiffs in Arkansas. It is claimed that the defendants caused certain checks to be transmitted by mail from the plaintiffs in Arkansas to the defendants in Kansas and certain securities to be transmitted by mail from Kansas to Arkansas, but the mailing of the securities to Arkansas is the only alleged contact that either of the defendants had with the state, other than the National Guard training that Douglas Lamb received here.

Thus, it becomes obvious that if the doctrine laid down in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), applies in this case, personal jurisdiction could not be sustained. It is clear that the plaintiffs have not alleged that the defendants have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158.

However, the law now appears to be clear that that test does not apply in a case in which the federal court exercises jurisdiction pursuant to a federal statute. As the Court of Appeals for the First Circuit in *Johnson Creative Arts, Inc. v. Woolmasters, Inc.,* 743 F.2d 947, 950 (1st Cir. 1984), said:

> It is clear that Congress can provide for nationwide service of process in federal court for federal question cases without falling short of the requirement of due process. When Congress does this, the Fifth Amendment analysis of due process necessary is different from one undertaken under the Fourteenth Amendment.

As the court noted in *Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265, 1271 (6th Cir.1984):

> This is implicit in the Supreme Court's treatment of the Fourteenth Amendment analysis in *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Justice White described two distinct but related functions performed by the Fourteenth Amendment due process requirement of minimum contacts between the nonresident defendant and the forum state:
>
>> It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And its acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.
>
> *Id.* [444 U.S.] at 291–92, 100 S.Ct. at 564–65. Obviously the second of these functions applies only to actions in state courts and diversity actions in federal courts. When a federal court is hearing and deciding a federal question case there are no problems of "coequal sovereigns." That is a Fourteenth Amendment concern which is not present in actions founded on federal substantive law. Thus, in our due process analysis of the present case in the light of the Kentucky long arm statute we will be concerned only with whether the district court's assertion of jurisdiction unfairly burdened I & M with the requirement of litigating in an inconvenient forum.

The reasoning used by the Court of Appeals for the Sixth Circuit in relation to the test to be applied is convincing. In deciding whether the plaintiffs have properly alleged personal jurisdiction over the defendants, this court must simply determine whether, in the first place, Congress has authorized service outside the area of juris-

diction of this court and, if so, whether this court's assertion of jurisdiction unfairly burdens the defendants with the requirement of litigating in this forum. In other words, if there is a Congressional enactment which authorizes service of process upon the defendants in Kansas for the wrongs allegedly done to the plaintiffs, the court must only determine whether the defendants will have been deprived of the right to a fair trial and, thus, a violation of their Fifth Amendment due process right because they are required to litigate the issues in Arkansas, a forum that is undoubtedly not as convenient for them as one located within the state of Kansas. But, the test laid down in cases such as *World-Wide Volkswagen, supra, Mountaire Feeds, supra, Hutson, supra,* and numerous other cases following the doctrine of *International Shoe, supra,* simply has no application in making such a determination. Instead, the court must determine whether there is a federal statute that authorizes this court to try this case and, if so, whether this forum is so inconvenient as to deny the defendants due process of law.

■ Among other things, the plaintiffs allege that the defendants violated certain provisions of the Securities Exchange Act of 1934. 15 U.S.C. § 78aa states, in pertinent part:

> Any criminal proceedings may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant ... transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

Thus, it is clear that Congress has placed venue in this court if it can be said that "any act constituting the violation occurred" in the Western District of Arkansas or that the defendants' alleged conduct amounts to transacting business in this dis-

trict. If venue in this court is proper, nationwide service of process is authorized.

Although, as indicated above, plaintiffs' complaint totally fails to allege facts sufficient even to meet this test, the portion of Douglas Lamb's affidavit pertinent to this issue, quoted above, cannot be disregarded by the court. Mr. Lamb swears that after he returned from training with the Air National Guard in Arkansas, plaintiff Neal Wilson contacted him at his office in Benedict, Kansas, by telephone, and inquired about investing in his oil interests. It is presumed that this must have resulted from the contacts that Wilson had with Lamb in Arkansas. He then admits that:

> I then mailed an agreement regarding the Dale Payne lease to the Wilsons. Under this agreement, the investors in the Payne lease were given the first option to invest in the Follmer lease. As a result of this contract provision I later contacted the Wilsons by mail concerning this option.

The court believes that the provisions of 15 U.S.C. § 78aa quoted above, and the cases interpreting that provision, compel the conclusion that this conduct on the part of Douglas Lamb gives the plaintiffs the right to sue the defendants in this district, and thus that venue in this district is proper. More than 35 years ago, Judge Learned Hand, then the Chief Judge for the Court of Appeals for the Second Circuit, writing in *Gratz v. Claughton,* 187 F.2d 46 (2d Cir.1951), held that this section of the Securities Exchange Act of 1934 properly laid venue in the District Court for the Southern District of New York in a case where a Florida citizen was sued to recover shortswing profits received as a result of a stock transaction in violation of section 16b of the act. Defendant argued that no "act or transaction constituting the violation occurred" in the Southern District. Judge Hand said that such argument

> ... need not detain us. It rests upon the assumption that the wrong consists in failing to turn over the profits to the corporation. In fact it is obtaining the profits by the wrongful purchase and

sale, or sale and purchase, of shares; and those acts took place on the floors of the New York Exchanges where by his orders the transactions took place.

Because the actual transfer of the stock took place in New York, it did not bother Judge Hand at all that apparently the Florida citizen and resident did not even come to the state of New York in relation to the transaction. Thus, under the reasoning of that case, and other cases to be cited below, it is not necessary that either of the defendants have physical contact or a physical presence within the state of Arkansas if they initiated a course of events, irrespective of where located at the time, which resulted in some act or transaction within this district which was "of material importance to the consummation of the scheme." *Hooper v. Mountain States Securities Corporation*, 282 F.2d 195, 205 (5th Cir.1960).

As the court said in *Hilgeman v. National Insurance Company of America*, 547 F.2d 298 (5th Cir.1977):

> According to § 27 any suit to enforce liability under the 1934 act may be brought in the district where "any act or transaction constituting the violation occurred." The act contemplated by the statute need not be crucial, nor must "the fraudulent scheme be hatched in the forum district." (citing cases.) But as was pointed out in *Hooper*, the jurisdictional act cannot be trivial; it must be "of material importance to the consummation of the scheme," *citing Hooper v. Mountain States Securities Corporation, supra.*

In this case even if every word of Douglas Lamb's affidavit is taken as true, which the court must in view of the plaintiffs' decision not to controvert it, even though he did nothing to consummate the deal or even to start it toward consummation while he was physically in Arkansas, he still mailed important documents to this state to be executed by the plaintiffs. That mailing resulted in the plaintiffs, according to the allegations, investing a substantial sum of money in two separate oil ventures operated by the defendants. The court cannot say that the mailing and receipt of this contract in Arkansas was not of "material importance to the consummation of the scheme," *Hooper, supra,* at 205.

There are numerous cases cited at note 93 in the annotations to 15 U.S.C.A. § 78aa which hold generally that "any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in the consummation of the fraudulent scheme is sufficient" to establish venue. *State Teachers Retirement Board v. Fluor Corp.*, 500 F.Supp. 278, 289 (1980), and other cases cited in that opinion and under that U.S.C.A. annotation.

In this case, it is alleged that the plaintiffs lost substantial sums of money because of the scheme to defraud which started with plaintiff's National Guard training within the state of Arkansas. As a part of that scheme, it is alleged that the very contracts which carried the plan and scheme to fruition were received by the plaintiffs in Arkansas after being mailed here by defendants. The court concludes that, under the statute quoted above, venue in this district is proper.

■ That leaves the question of whether the fact that defendants will be required to defend this action in the Western District of Arkansas, presumably a forum that is not as convenient for them as they might desire, deprives them of the due process of law guaranteed by the Fifth Amendment to the United States Constitution. In view of the fact of the relatively close geographic proximity of Kansas to the Western District of Arkansas, and the claim that at least the initial contacts took place in Arkansas while defendant Douglas Lamb was training here, the court does not believe that this forum is so inconvenient as to deprive defendants of due process.

■ Defendant Lawrence Lamb argues that since he had absolutely no physical contact with the state of Arkansas, the motion to dismiss should be granted as to him in any event. In the first place, as indicated above, the physical presence of

the defendants in Arkansas is not necessary for this cause of action to be maintained in this district, and even if Lawrence Lamb did not transmit the mailing to Arkansas, or had no part in that mailing, he still may be sued in this district under the facts alleged. As the court said in *Carty v. Health-Chem. Corp.*, 567 F.Supp. 1 (D.C. Pa.1982), in order for venue to be proper, it is not required that each defendant perform an act within the district. It is sufficient if any of the defendants perform such an act which tended to benefit other defendants.

The defendants place much reliance on a case from the District Court for the Eastern District of Michigan, *Ritter v. Zuspan*, 451 F.Supp. 926 (E.D.Mich.1978). In that case, a group of Michigan purchasers contacted the defendant sellers in West Virginia concerning the sale of interests in a coal mine located in that state. The purchasers sought out the sellers in West Virginia on their own initiative and traveled to that state to negotiate. Certain representations made by the sellers were made in West Virginia. The only contact that Michigan had with the transaction was that, after the negotiations in West Virginia were completed, the defendant sellers used the mails to send certain relevant documents to Michigan. The court believes that the "facts" alleged and, in fact, admitted, are so substantially different than the facts in the *Ritter* case that that case lends defendants' position little comfort. As already pointed out, this all started with defendant Douglas Lamb meeting one of the plaintiffs while he was in Arkansas, and the transaction was apparently negotiated and "sold" over the phone. The papers which consummated the transaction were mailed from Kansas into Arkansas and it appears that the deal was not "made" until that occurred. As indicated above, the court simply believes that the transaction and acts committed in Arkansas are of material importance to the consummation of the alleged scheme.

The motion to dismiss will be denied by separate order.