# IOWA ELECTRIC LIGHT AND POWER COMPANY, Appellee,

v.

## ATLAS CORPORATION, Appellant.

### No. 78–1759.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1979.

Decided Aug. 22, 1979.

---

Michael Corrigan, of Simpson, Thacher & Bartlett, New York City (argued), Eric N. Vitaliano, George M. Newcombe, Wesley N. Fach, Jr., Kristine Hamann, New York City, and Thomas M. Collins and Gary J. Streit, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, on brief, for appellant.

Keith E. Stapleton, Silliman, Gray & Stapleton, Cedar Rapids, Iowa (argued), William O. Gray, John F. Gaston, Thomas J. Pitner, Cedar Rapids, Iowa, and Robert Lowenstein, Joel S. Wight and William J. Franklin, Washington, D. C., on brief, for appellee.

Before LAY, ROSS, and McMILLIAN, Circuit Judges.

ROSS, Circuit Judge.

Plaintiff, Iowa Electric Light and Power Company (Iowa Electric), an electric utility in Cedar Rapids, Iowa, filed this lawsuit in the Northern District of Iowa,[1] seeking injunctive relief and specific performance of a contract under which defendant Atlas Corporation (Atlas) was to supply plaintiff with uranium ore concentrates, i. e., uranium "yellowcake." Atlas submitted a counterclaim for equitable price adjustment after contesting the court's jurisdiction over its person under the Iowa long-arm statute, Iowa Code § 617.3. We hold that the district court erred in overruling the motion to dismiss for lack of personal jurisdiction over Atlas, and we therefore reverse and remand.

I.

Atlas, incorporated in Delaware, has maintained its principal offices in New Jersey since 1977 and previously did so in New York. The company's Minerals Division, which was directly involved in the contract with Iowa Electric, is located in Denver, Colorado with its uranium mining and milling operations primarily in Moab, Utah. Atlas has no agents, employees, offices or facilities in Iowa and owns no property there. Atlas does not solicit or transact any business in Iowa, nor is it qualified to do business in that state.

Atlas did not initiate the agreement with Iowa Electric which is the subject of this lawsuit. In 1971 Iowa Electric wrote to various uranium producers requesting price quotations and offers to sell specific quantities of natural uranium ore concentrates to be supplied over a period of years. The solicitation of Atlas' bid was mailed to Atlas' offices in New York. The invitations to bid designated Pickard, Lowe & Associates, Inc., a consulting fuel management firm in Washington, D. C., to receive all responses, and Atlas mailed its bid proposal to the Pickard firm in Washington, D. C. Thereafter, the contract between Iowa Electric and Atlas was negotiated in Washington, D. C. and executed by Atlas in New York.[2]

The contract called for performance by Atlas in Illinois. Atlas was to deliver shipments of uranium ore to sampling and conversion facilities in Metropolis, Illinois designated by Iowa Electric. There, as to each

---

1. The Honorable Edward J. McManus, Chief Judge, presiding.

2. Faced with substantial unforeseen increases in production costs several years after execution of the parties' contract, Atlas sought renegotiation of the contract price provision. Unsuccessful renegotiations and delayed deliveries eventually led to this lawsuit. In the course of these negotiations, an officer of Atlas Corporation entered Iowa for one day. We do not regard this visit as a significant contact between Atlas and the forum.

shipment which conformed to specifications, title passed to Iowa Electric, and Atlas had no further obligations under the contract.

## II.

Iowa Electric contends that Atlas was "doing business" in Iowa within the meaning of the state's long-arm statute, Iowa Code § 617.3. Section 617.3 states in part:

> If a foreign corporation makes a contract with a resident of Iowa *to be performed in whole or in part by either party in Iowa,* \* \* \* such acts shall be deemed to be doing business in Iowa by such foreign corporation for the purpose of service of process or original notice on such foreign corporation under this section, and, if the corporation does not have a registered agent or agents in the state of Iowa, shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be its true and lawful attorney upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such contract \* \* \*.

(Emphasis added.) Iowa Electric urges that it performed payment, record-keeping, ordering and notice functions in Iowa under the contract, and that its own acts satisfy the requirement that the contract "be performed \* \* \* in part by either party in Iowa." We consider this a close question, particularly as the state supreme court has ruled that mere payment of the contract price by an Iowa resident does not constitute "performance" in Iowa within the meaning of Iowa Code § 617.3. *Gravelie v. TBS Pacific, Inc.,* 256 N.W.2d 230, 232

(Iowa 1977). Nevertheless, we cannot say that as a matter of state law, Iowa Electric's additional notice, ordering and record-keeping functions were insufficient "performance" in Iowa under the long-arm statute.

## III.

However, while Iowa Electric's unilateral acts in the forum may suffice to invoke the state's long-arm statute, they cannot supply the requisite minimum contacts between Atlas and the forum state so that the assertion of personal jurisdiction over Atlas would comply with traditional notions of fair play and substantial justice. *See International Shoe v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958):

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, *but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State,* thus invoking the benefits and protections of its laws.

(Emphasis added.)

Merely entering into a contract with a forum resident does not provide the requisite contacts between a defendant and the forum state. *See Aaron Ferer & Sons Co. v. American Compressed Steel Co.,* 564 F.2d 1206, 1211 (8th Cir. 1977).[3] This is particu-

---

**3.** To assess compliance with due process, with respect to jurisdiction in a particular case, the minimum contacts relied upon must be between the defendant and the forum state, not simply between the defendant and a resident of the forum state.

*Aaron Ferer & Sons Co. v. American Compressed Steel Co.,* 564 F.2d 1206, 1211 (8th Cir. 1977). In this and two related cases, *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.,* 558 F.2d 450 (8th Cir. 1977) and *Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d 1211 (8th Cir. 1977), we agreed with

the United States Court for the District of Nebraska that it could not assert personal jurisdiction over any of the nonresident corporate defendants who had entered into contracts with the Nebraska plaintiff. In each case, the defendants had engaged in a continuous course of dealing with the resident plaintiff for a substantial time, and negotiations involved telephone calls and mailings both originating and received in Nebraska. In addition, the plaintiff prepared payments in Nebraska drawn on a Nebraska bank, and the contracts were prepared in Nebraska, signed by the plaintiff there,

larly true when all elements of the defendant's performance are to take place outside of the forum. *Id.* at 1210. *See also Barnstone v. Congregation Am Echad*, 574 F.2d 286, 288 (5th Cir. 1978); *American Steel, Inc. v. Cascade Steel Rolling Mills, Inc.*, 425 F.Supp. 301, 303 (S.D.Tex.1975), *aff'd*, 548 F.2d 620 (5th Cir. 1977).

Iowa Electric recites several factors which the district court considered sufficient to justify the exercise of jurisdiction over Atlas.

First, the contract designated Iowa law to control interpretation of the parties' agreement. However, the Supreme Court has consistently differentiated factors which affect the choice of substantive law applicable to a controversy from those which permit a court to exercise personal jurisdiction over a nonresident. *See Hanson v. Denckla, supra*, 357 U.S. at 254, 78 S.Ct. at 1240:

> It does not acquire that jurisdiction by being the "center of gravity" of the controversy, or the most convenient location for litigation. *The issue is personal jurisdiction, not choice of law.* It is resolved in this case by considering the acts of the trustee.

(Emphasis added.) *See also Shaffer v. Heitner*, 433 U.S. 186, 215, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977), "we have rejected the argument that if a State's law can properly be applied to a dispute, its courts necessarily have jurisdiction over the parties to that dispute." *Accord, Kulko v. Superior Court of California*, 436 U.S. 84, 98, 98 S.Ct. 1690, 1700, 56 L.Ed.2d 132 (1978), "the fact that California may be the 'center of gravity' for choice-of-law purposes does not mean that California has personal jurisdiction over the defendant."

Other courts have specifically rejected the designation of forum law to govern contract interpretation as a basis for long-arm jurisdiction. *See, e. g., Galgay v. Bulletin Co., Inc.*, 504 F.2d 1062, 1066 (2nd Cir. 1974):

Appellant's final contention is without merit. The agreement here provided that the contract was to be governed and interpreted in accordance with New York law, and appellant argues that this provision makes the defendant amenable to suit in New York. It is well established that this choice-of-law provision does not have jurisdictional implications.

*See also Telco Leasing, Inc. v. Marshall County Hospital*, 586 F.2d 49, 51 (7th Cir. 1978); *Barnstone v. Congregation Am Echad, supra*, 574 F.2d at 289; *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 382 (6th Cir. 1968); *Graham Engineering Corp. v. Kemp Products Ltd.*, 418 F.Supp. 915, 921 n. 9 (N.D.Ohio 1976).

Next, Iowa Electric relies on the district court's conclusions that the contract in this case had a "substantial connection" with Iowa and that Iowa had expressed a "strong interest in providing a forum" for disputes of this kind. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

In *McGee* a Texas insurance company was sued in California by the beneficiary of a life insurance policy which had been solicited and executed in California. The Texas company, after assuming the obligations of an Arizona insurance company, sent a letter to California soliciting the policyholder's reinsurance and then mailed to him a reinsurance certificate. The offer to reinsure the policyholder was therefore extended and accepted in the forum state where the policyholder resided and from which he mailed premiums until he died. The contract in the present case, on the other hand, was not solicited, negotiated or executed in Iowa. Nor was it to be performed in Iowa except for certain ministerial acts by Iowa Electric involving notice, ordering and record-keeping.

In *McGee* the Supreme Court also noted that the forum state had a manifest inter-

---

mailed to the nonresident defendants for execution and returned to Nebraska. We held these contacts with the forum insufficient because the contracts were not to be performed in Ne-

braska, the goods did not originate there and were not to be delivered in the forum and the defendants maintained no offices, agents or salesmen in the state.

est in the protection of resident insureds against nonresident insurance companies refusing to pay claims. This interest was reflected in a special jurisdictional statute which subjected "foreign corporations to suit in California on insurance contracts with residents of that State * * *." *Id.* at 221, 223, 78 S.Ct. at 200.

Iowa, on the other hand, has manifested no comparable "particularized interest in trying such cases in its courts by, *e. g.,* enacting a special jurisdictional statute." *Kulko v. California Superior Court, supra,* 436 U.S. at 98, 98 S.Ct. at 1700. Not only is there no special jurisdictional statute in Iowa expressing an interest specifically in contract disputes over fuel, but the Iowa legislature has limited use of its long-arm statute in contract actions generally to those in which the contract was to be performed, at least in part, in Iowa. Iowa Code § 617.3. Iowa is not among those states which "extend long-arm statutes jurisdiction to the full extent of constitutional authority." *Gravelie v. TBS Pacific, Inc., supra,* 256 N.W.2d at 232.[4]

Finally, Iowa Electric contends that Atlas ships its product into the state of Iowa. We disagree. Atlas is responsible for delivering a raw material, uranium oxide ($U_3O_8$), in solid form ("yellowcake") to a testing facility in Illinois and four to six weeks later to a conversion plant owned by Allied Chemical Corporation in Illinois. Thereafter, the raw material undergoes physical transformations, chemical alterations, comingling with similar material from other sources, and a complex manufacturing process involving three companies in three states, from which, after approximately twelve months, a finished product, fuel bundles, ultimately emerges for shipment into Iowa.

The details of this process are as follows: Atlas delivers "yellowcake" to the Lucius Pitkin plant in Metropolis, Illinois for testing. If the material meets the specifications in the contract between Atlas and Iowa Electric, Atlas then delivers it in Iowa Electric's name to Allied Chemical Corporation in Metropolis, Illinois, where the material is designated to the Iowa Electric account at Allied's facility. At this point, Atlas has completed all of its contract obligations, and title to the yellowcake passes to Iowa Electric.[5] Atlas has no further involvement in subsequent refinement or manufacturing processes.

Pursuant to contract between Iowa Electric and Allied Chemical Corporation, the yellowcake is then comingled with ore from other sources, all of which undergoes conversion to a gas, uranium hexafloride ($UF_6$).

When instructed to do so by Iowa Electric, Allied ships the $UF_6$ gas to the gaseous diffusion plant in Oak Ridge, Tennessee operated by the United States Energy Research and Development Administration (ERDA). At this stage, pursuant to a separate contract between Iowa Electric and ERDA, the chemical composition of the $UF_6$ gas is altered by an enrichment process which increases the percentage of a constituent, the U–235 isotope, to a level suitable for use as nuclear fuel. The $UF_6$ which Allied transports to ERDA is comingled with $UF_6$ from other sources for the enrichment process.

Then, by a separate contract with Iowa Electric, the General Electric Company (G.E.) receives from ERDA enriched $UF_6$ at the G.E. nuclear fuel fabrication plant in Wilmington, North Carolina. The fabrica-

---

**4.** Another important factor in *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), was the absence of a readily available forum for "small or moderate individual claimants [who] frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof." *Id.* at 223, 78 S.Ct. at 201. Iowa Electric does not contend that it could not afford to litigate elsewhere or that Atlas would not be subject to suit in, for example, Dela-

ware, New York, Colorado, Utah and perhaps Illinois.

**5.** If the material which Atlas delivers to Illinois is defective or fails to meet specifications, this fact is discovered at the Lucius Pitkin plant. Thereafter, others in the finishing or refining process are responsible for meeting any subsequent specifications or other requirements under their separate contracts with Iowa Electric.

tion process consists of various functions, i. e., conversion from $UF_6$ gas to $UO_2$ powder, pelletizing, rod loading and assembly of fuel bundles. The final manufactured products, fuel bundles, are eventually shipped from North Carolina into Iowa.

The processes from conversion at Allied's facility through fuel fabrication at G.E.'s plant occur over a period of approximately twelve months. Iowa Electric schedules and directs the shipment of these products to and from the intermediary companies based on the timing of its own ultimate need for the finished product. We do not agree, in light of all of these facts, that Atlas ships its material into the state of Iowa.

■ Furthermore, a seller's knowledge that his product is "destined" in some form for the forum is not necessarily sufficient contact with that state to confer jurisdiction over the seller, particularly in the absence of any other voluntary contacts with the forum state. *See also Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 189 (5th Cir. 1978); *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723, 730 (5th Cir.), *cert. denied*, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973); *Golden Belt Mfg. Co. v. Janler Plastic Mold Corp.*, 281 F.Supp. 368, 370–71 (M.D.N.C.1967), *aff'd*, 391 F.2d 266 (4th Cir. 1968).[6]

■ We hold that the defendant lacked sufficient minimum contacts with the state of Iowa to support the assertion of jurisdiction over its person. We therefore reverse and remand, directing the district court to vacate its prior judgment and to enter judgment of dismissal in favor of the defendant, Atlas Corporation.

---

**6.** We recently held that a foreign seller, despite its reason to know that its product was ultimately bound for the United States, could not be sued in the state in which its product injured a resident (and thus in any state) because the article had been distributed by intermediaries who made the decisions concerning the product's ultimate customers and use. *See Hutson v. Fehr Brothers, Inc.*, 584 F.2d 833 (8th Cir. 1978) (en banc). The product in *Hutson* was in the same form when it injured the forum resident as when it had left the defendant and had not undergone the kind of transformation from raw material to finished product through intermediate companies outside of the forum as in this case.