MOUNTAIRE FEEDS, INC., Appellant,

v.

AGRO IMPEX, S. A., A Panamanian
Corporation, Appellee.

No. 80–2193.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1982.

Decided May 6, 1982.

**652**

Peter B. Heister, Laser, Sharp, Haley, Young & Huckabay, Little Rock, Ark., for appellee.

Hillary Rodham, Vincent Foster, Jr., Rose Law Firm, A Professional Association, Little Rock, Ark., for appellant.

Before HEANEY, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Mountaire Feeds, Inc. (Mountaire) appeals from a final order entered in the District Court[1] for the Eastern District of Arkansas dismissing its complaint against Agro Impex, SA (Agro Impex) for lack of personal jurisdiction. For the reasons discussed below, we affirm the judgment of the district court.

The facts are not disputed. Mountaire is an Arkansas corporation engaged in the manufacture and marketing of poultry and animal feeds; its principal place of business is North Little Rock. Agro Impex is a Panamanian corporation and an international exporter of animal feeds; it has four principal places of business, including Dallas, Texas. In January 1977, the president of Agro Impex telephoned Mountaire for price information. In November 1977, Agro Impex ordered by telephone four shipments of animal feed. Agro Impex confirmed the purchase by letter; an earlier letter contained specifications about the quality and composition of the shipments and guarantees of analysis. Agro Impex provided Mountaire with an irrevocable letter of credit issued by a Dallas bank and presented through a Little Rock bank. The parties also exchanged communications concerning the packaging, labeling and shipping of the feed. Agro Impex furnished Mountaire with special shipping tags to attach to the bags of feed; the tags read "F.O.B. New Orleans."

In early 1978, Agro Impex made two additional purchases of feed. Agro Impex again provided Mountaire with shipping tags, shipping instructions and letters of credit. Payment was made to Mountaire in North Little Rock; shipment was "F.O.B. New Orleans." At no time did any officer or agent of Agro Impex visit Arkansas to negotiate or execute the transactions. All contacts between the parties were by mail or telephone.

In June 1978, a dispute arose concerning the quality of the feed supplied by Mountaire. Agro Impex refused to pay for the last nine shipments. Mountaire then brought suit in Arkansas state court to collect the balance owing on the account ($126,938.55). Service of process was made under the Arkansas long-arm statute, Ark. Stat.Ann. §§ 27–2502 C(1)(a), 2503.[2] Agro Impex then removed the action to federal district court on the basis of diversity of citizenship, 28 U.S.C. § 1332, and filed a motion to quash service of process for lack of personal jurisdiction. Agro Impex argued that it lacked the requisite minimum contacts with the state of Arkansas. The district court granted the motion and dismissed the action without prejudice. *Mountaire Feeds, Inc. v. Agro Impex, SA*, No. LR–C–78–259 (E.D.Ark. Oct. 27, 1980) (as amended by order). This appeal followed.

---

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

2. Ark.Stat.Ann. § 27–2502 C(1)(a), (2) provides:
   C. Personal jurisdiction based upon conduct.
   1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

   (a) transacting any business in this State;
   . . . .
   2. When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him.
   § 27–2503 describes the methods and manner of service of process outside the state.

For reversal Mountaire argues that the reach of the Arkansas long-arm statute is limited only by constitutional due process and that Agro Impex's contacts with Arkansas satisfy the state statutory requirement of "transacting business" and the due process requirement of minimum contacts. Agro Impex argues that its contacts do not meet the "minimum contacts" test.

■ "By virtue of Fed.R.Civ.P. 4(d)(7) & (e), a federal court in a diversity action enjoys jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum state." *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1264 n.2 (5th Cir. 1981); *see* 4 C. Wright & A. Miller, Federal Practice and Procedure § 1075 (1969). "Thus the jurisdictional issue in the case at bar is the same as it would have been if the case had remained in the state court from which it was removed." *Lakeside Bridge & Street Co. v. Mountain State Construction Co.*, 597 F.2d 596, 598 (7th Cir. 1979) (*Lakeside*), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). Although the reach of the state long-arm statute is a question of state law and federal courts are required to accept the interpretation given the statute by the state supreme court, the extent to which the reach of the long-arm statute is limited by due process is a question of federal law. *E.g., Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980); *Lakeside*, 597 F.2d at 599. The Arkansas Supreme Court has interpreted the reach of the Arkansas long-arm statute to be coextensive with that permitted by due process. *E.g., Nix v. Dunavant*, 249 Ark. 641, 460 S.W.2d 762 (1970); *see Martin v. Kelley Electric Co.*, 371 F.Supp. 1225 (E.D.Ark.1974).

■ Our inquiry is a two-part one: first, whether the facts presented satisfy the statutory requirements, and, second, whether the exercise of personal jurisdiction is consistent with due process. *E.g., Hutson v. Fehr Bros.*, 584 F.2d 833, 835 (8th Cir.) (banc), *cert. denied*, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 654 (1978); *Dangerfield v. Bachman Foods, Inc.*, 515 F.Supp. 1383, 1386 (D.N.D.1981).

While the facts adduced in a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction. "Once jurisdiction has been controverted or denied, [the plaintiff has] the burden of proving such facts."

*Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977), *citing Block Industries v. DHJ Industries, Inc.*, 495 F.2d 256, 259 (8th Cir. 1974); *cf. Hawes Firearm Co. v. Roberts*, 263 Ark. 510, 565 S.W.2d 620 (1978) (banc).[3]

It is not contested that Agro Impex was "transacting business" within Arkansas within the meaning of Ark.Stat.Ann. § 27–2502 C(1)(a). We note that the Arkansas Supreme Court has held that the term "transacting business" is more inclusive than the earlier term "doing business" and

---

**3.** Mountaire also argues that under Arkansas law, as set forth in *Hawes Firearm Co. v. Roberts*, 263 Ark. 510, 565 S.W.2d 620, 621 (1978) (banc), Agro Impex, as the nonresident defendant which filed the motion to quash, had the burden of proving that sufficient contacts do not exist to support personal jurisdiction. *But see id.* 565 S.W.2d at 622 (Byrd, J., dissenting). Whatever the placement of the burden of producing evidence may be under Arkansas law, the question of burden of proof of personal jurisdiction in the federal courts is not controlled by state law. "It is by now well-settled that the party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists, and the burden may not be shifted to the party challenging the jurisdiction." *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 490 (5th Cir. 1974), *citing Jetco Elec. Indus., Inc. v. Gardiner*, 473 F.2d 1228, 1232 (5th Cir. 1973); *see also Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259–60 (8th Cir. 1974) (plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendant can be subjected to jurisdiction within the state; prima facie showing of jurisdiction required).

that the legislative intention was to expand jurisdiction to the modern constitutional limit. *E.g., Wichman v. Hughes*, 248 Ark. 121, 450 S.W.2d 294, 296 (1970) (single contractual transaction), *citing* Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois*, 1963 U.Ill. L.F. 533, 565 (Arkansas long-arm statute patterned after Illinois statute). Nor was it disputed that Mountaire's cause of action arose from Agro Impex's transaction of business within Arkansas. Ark.Stat.Ann. § 27–2502 C(2). Thus, the question is whether the application of the Arkansas long-arm statute in the present case violates due process.

■ The test for due process is whether there are sufficient "minimum contacts" between the nonresident defendant and the forum state so that the assertion of personal jurisdiction over the nonresident defendant is consistent with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

■ The distinction between nonresident sellers and nonresident buyers recognized in *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365, 368 (8th Cir. 1969) (Minnesota law), cannot help Mountaire. The court in *Electro-Craft* upheld long-arm jurisdiction over a nonresident *seller*. However, a later case, *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, did not wholly endorse the *Electro-Craft* position that "solicitation by a nonresident purchaser for delivery outside the forum state is a more minimal contact than that of a [nonresident] seller soliciting the right to ship goods into the forum state," *id.* at 1214, and stated that "the ultimate test is whether the [nonresident] defendant, *either as seller or buyer*, has performed 'some act by which [it has] purposefully [availed] itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws.'" *Id.* at 1215 (emphasis added), *citing Hanson v.*

*Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Thus, although it may have been easier to sustain the exercise of personal jurisdiction over nonresident sellers than buyers under *Electro-Craft*, the test as applied to either nonresident sellers or buyers is now the same. In any case, the *Electro-Craft* distinction would be of little value to Mountaire because Agro Impex, unlike the nonresident defendant in *Electro-Craft*, is a nonresident *buyer*, not a nonresident seller.

This Court has considered the following factors in deciding whether or not a nonresident's contacts with the forum state were sufficient to impose jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d at 1215; *see Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8th Cir. 1965). "We have said that in analyzing minimum contacts, the interest of a state in providing a forum for its residents, and the convenience of the parties are only 'secondary factors' to be considered and are not determinative." *Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206, 1210 n.5 (8th Cir. 1977). As further explained in *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239:

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

The critical relationship is that "among the defendant, the forum, and the litigation."

*Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). In essence, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 566.[4] Application of *International Shoe* to specific fact situations, particularly to cases involving contract claims by resident plaintiffs against nonresident corporate defendants, as in the present case, has produced somewhat inconsistent results. *Compare Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d at 1211, *with Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365; *see also Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 445 U.S. 907, 909–10, 100 S.Ct. 1087, 1089, 63 L.Ed.2d 325 (1980) (White, J., dissenting from order denying writ of certiorari) (listing of conflicting positions of state and federal courts); *Lakeside*, 597 F.2d at 601–02 n.9.

Mountaire argues that its performance in Arkansas of the sales contracts supports the exercise of personal jurisdiction over Agro Impex. Mountaire finds the requisite "minimum contacts" between Agro Impex and Arkansas in its manufacture, packaging and shipping of over 2,000 tons of animal feed worth over $750,000. Mountaire argues that Agro Impex could have reasonably foreseen the impact of these contracts on Mountaire (the Agro Impex contracts represented a majority of its inventory in 1977). Mountaire also refers to the parties' extensive use of the facilities of interstate commerce (telephone, mail, banking).

We conclude that Mountaire's unilateral performance in the forum state is insufficient to support the exercise of personal jurisdiction over Agro Impex. *See Lakeside*, 597 F.2d at 603; *accord, Premier Corp. v. Newsom*, 620 F.2d 219, 222–23 (10th Cir. 1980); *Barnstone v. Congregation Am Echad*, 574 F.2d 286, 288 (5th Cir. 1978) (per curiam). The sales contracts between Mountaire and Agro Impex do not constitute a basis for jurisdiction. "Merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." *Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d at 1303 (nonresident seller), *citing Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d at 1211. The commercial contacts in the present case tie Agro Impex to Mountaire, but not to Arkansas. "It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident." *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n.6 (8th Cir. 1977). Agro Impex does not maintain an office or agent in Arkansas. No Agro Impex sales representative or other employee ever entered Arkansas in connection with the sales contracts at issue. Nor did any Agro Impex personnel supervise Mountaire's performance in Arkansas. Although the animal feed did apparently originate in Arkansas, the sales contracts did not require performance in Arkansas.[5] It may have been reasonably foreseeable

---

4. The Due Process Clause, by ensuring the "orderly administration of the laws," gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 566, 62

L.Ed.2d 490 (1980) (citations omitted). The "degree of predictability" afforded nonresident defendants by due process is debatable. *See Wisconsin Elec. Mfg. Co. v. Pennant Prods., Inc.*, 619 F.2d 676, 679 (7th Cir. 1980).

5. We express no opinion as to whether a contract requiring performance within the forum state would support the exercise of personal jurisdiction over a nonresident defendant.

The goods in the present case were not to be delivered within the forum state; the shipments were marked "F.O.B. New Orleans." *See Lakeside Bridge & Steel Co. v. Mountain St. Constr. Co.*, 597 F.2d 596, 603–04 & n.14 (7th Cir. 1979) (questioning significance for purposes of personal jurisdiction of shipping

that Mountaire would have manufactured the animal feed in Arkansas; Mountaire's principal place of business is located within Arkansas. However, "'foreseeability' [of an impact within the forum state] alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 295, 100 S.Ct. at 565 (products-liability action). Although the parties did make telephone calls, exchange correspondence, and use banks to arrange payment, "the use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process." *Aaron Ferer & Sons v. Atlas Scrap Iron & Metal Co.,* 558 F.2d at 453; see *McQuay, Inc. v. Samuel Schlosberg, Inc.,* 321 F.Supp. 902, 905–06 (D.Minn.1971) (payment of purchase price in forum state insufficient to support long-arm jurisdiction).

In conclusion, we hold that Mountaire's unilateral performance within the forum state cannot alone supply the "minimum contacts" between the forum state and Agro Impex required by due process to support personal jurisdiction. Accordingly, the judgment of the district court is affirmed.

term "F.O.B. forum state"), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980).