**Dora HAWES, Special Administrator of the Estate of Brian K. Hawes, Deceased, Plaintiff,**

v.

**HONDA MOTOR COMPANY, LTD., et al., Defendants.**

**Civ. No. LR–C–89–165.**

United States District Court, E.D. Arkansas, W.D.

June 11, 1990.

H. David Blair, Batesville, Ark., Sam Boyce, Newport, Ark., for plaintiff.

Michael E. Hale, Little Rock, Ark., G. Keith Phoenix and Roger K. Rea, St. Louis, Mo., for defendants.

## ORDER

ROY, District Judge.

Before the Court is the Motion to Dismiss filed on behalf of Honda R & D Co., Ltd. The relevant facts for purposes of the motion are as follows:

Plaintiff, Dora Hawes, Special Administratrix of the Estate of Brian K. Hawes, filed a complaint against Honda R & D Co., Ltd., and others setting forth various theories of liability and seeking damages allegedly resulting from an accident which occurred on March 8, 1987 in which Brian K. Hawes died. At the time of the accident, Brian K. Hawes was riding a Honda ATV. The parties have stipulated to the following facts:

1. The 1982 Honda all-terrain vehicles, including the Honda ATC Model 185S, were built by Honda Motor Co., Ltd., (hereinafter referred to as "Honda Motor") in Japan.

2. All 1982 Honda ATCs, including the Honda ATC 185S, sold in the United States were shipped by Honda Motor to American Honda Motor Co., Inc. (hereinafter referred to as "American Honda") and distributed through American Honda's authorized dealers.

3. Honda ATVs shipped to American Honda by Honda Motor are distributed by American Honda to authorized Honda dealers in the United States, Puerto Rico and the U.S. Virgin Islands.

4. All design and developmental testing of Honda ATCs, including the 1982 Honda ATC 185S, was performed by or under the direction of Honda R & D Co., Ltd., (hereinafter referred to as "Honda R & D").

5. The 1982 Honda ATC 185S was built by Honda Motor in accordance with specifications provided by Honda R & D.

6. Design and developmental testing of Honda ATVs manufactured by Honda Motor and bearing the Honda trade name is done by Honda R & D.

7. Prior to 1960, Honda R & D was the Design and Testing Division of Honda Motor.

8. In 1960, the Design and Testing Division of Honda Motor was incorporated as Honda R & D Co., Ltd. and was, and has been at all times since 1960, a wholly owned subsidiary of Honda Motor.

9. Honda R & D was created to design and develop products to be manufactured by Honda Motor.

10. Honda R & D works exclusively for Honda Motor or other entities owned by Honda Motor.

11. American Honda is a California corporation and is, and has been at all times, a wholly owned subsidiary of Honda Motor.

12. One of the corporate purposes of American Honda as reflected in its Articles of Incorporation is the distribution of Honda ATVs, including the 1982 Honda ATC 185S.

13. American Honda distributed only Honda ATC vehicles supplied to it by Honda Motor, all of which bear the Honda name.

14. Honda R & D has obtained copyrights, in the United States, upon certain documents owned by it, which pertain to the design and developmental testing of Honda ATVs.

15. American Honda distributed products supplied to it by Honda Motor throughout the United States, including Arkansas.

16. The number of ATVs shipped by Honda Motor to American Honda for the 1982 model year was 216,816.

17. The number of motorcycles and ATVs distributed by American Honda to authorized dealers within the state of Arkansas for the 1982 model year was 14,887.

The issue before the Court is whether the facts set out above constitute sufficient contacts with the state of Arkansas to allow the Court to exercise jurisdiction over defendant Honda R & D Co., Ltd. The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330 (5th Cir.1986).

The Court's inquiry consists of two parts. First, the Court must decide whether the facts presented satisfy the requirements of Arkansas' long arm statute. *International Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 452 (8th Cir.1984); *Sales Serv., Inc. v. Daewoo International (Am.) Corp.*, 719 F.2d 971, 972 (8th Cir.1983); *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir. 1982). The Court must then determine if the exercise of personal jurisdiction is consistent with due process. *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651 (8th Cir.1982).

> Although the reach of the state long-arm statute is a question of state law and federal courts are required the accept the interpretation given the statute by the state supreme court, the extent to which the reach of the long-arm statute is limited by due process is a question of federal law.

*Id.* at 653.

"The Arkansas Supreme Court has interpreted the reach of the Arkansas long-arm statute to be coextensive with that permitted by due process." *Mountaire, supra.*

■ Plaintiffs predicate jurisdiction under the Arkansas "long-arm" statute, Ark. Code Ann. § 16–4–101. The relevant portion of this statute states:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the persons:
>
> .  .  .  .  .

causing tortious injury in this state by an act or omission outside this state if he ... derives substantial revenue from goods consumed ... in this state.

Ark.Code Ann. § 16–4–101 C.1.(d).

There is no dispute that the relevant injury occurred within Arkansas. Therefore, the next question is whether defendant Honda R & D, Ltd. derives substantial revenue from goods consumed within the state. Honda R & D argues that plaintiff has offered no evidence that Honda R & D derives any revenue from the sale of any goods in Arkansas. It is argued that Honda R & D's earnings associated with a particular ATV end with the sale of production blueprints to Honda Motor.

According to the stipulation set out above, Honda R & D is, and always has been, a wholly owned subsidiary of Honda Motor Co., Ltd. (hereinafter referred to as "Honda"), a Japanese company. Its purpose is to conduct research and development of products, and the testing, and to furnish plans and specifications from which the Honda products are manufactured by Honda. Until 1959, Honda R & D was a division of Honda. In 1959 it was incorporated as a wholly owned subsidiary. Insofar as the all-terrain vehicles are concerned, including the one involved herein, all design development and testing was done by Honda R & D, or someone under its direction. The drawings and specifications are furnished to the parent corporation, Honda, which fabricates the machine in accordance with these without further testing or analysis. All work done by Honda R & D is for Honda.

According to the deposition testimony of William F. Herten, who is with American Honda and who appeared to answer on behalf of the other defendant corporation, American Honda is the exclusive distributor in the United States of all products bearing the Honda trade name. American Honda then distributes Honda products to authorized dealers within the fifty United States plus two territories.

As stated by the plaintiff, a review of the consolidated financial statement indicates that the revenues of the parent Honda,

Honda R & D, and American Honda are stated on a consolidated basis. All earnings of Honda R & D and American Honda are included in the consolidated financial statements.

In 1982, Honda shipped 11,132 ATVs to Arkansas dealers at wholesale prices which ranged from $500.00 to $1,800.00; of these, 10,717 were sold at retail. Taking a mid-point wholesale price, $1,150.00, this means Honda family received revenues in excess of $12,000,000.00 for ATVs only sold by Arkansas dealers.

Even though these are revenues to the Honda corporate family, Honda R & D obviously enjoys the revenues received by the Honda family. It does business with no one else. Its revenues are not separately stated. It lives through the total revenues generated by the parent through the operations of it and its subsidiaries.

■ The Court finds that plaintiff has submitted sufficient information to conclude that defendant Honda R & D derives substantial revenue from the state of Arkansas, and that exercising jurisdiction over Honda R & D satisfies due process. The Eighth Circuit discusses the appropriate steps the Court must take in making the due process determination in *International Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc., supra.*

In judging minimum contacts to satisfy due process requirement, a court properly focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* [466] U.S. [408], [413], 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984), *quoting, Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977); *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F.2d 1338, 1340 (8th Cir.1983). Nonresident defendants must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Helicopteros Nacionales,* 466 U.S. at [413], 104 S.Ct. at 1872, *quoting, International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct.

154, 158, 90 L.Ed. 95 (1945); *Land–O–Nod,* 708 F.2d at 1340, *quoting Int'l. Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; [*State ex rel.*] *Newport* [*v. Weisman*], 627 S.W.2d [874], 878 [(1982)], *quoting, World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

In this circuit, the "minimum contacts" standard has devolved [sic] into a consideration of five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Land–O–Nod,* 708 F.2d at 1340, *citing, Aaron Ferer & Sons II,* 564 F.2d [1211] at 1215 [8th Cir.1977]; *Mountaire Feeds,* 677 F.2d at 654. The last two factors are of secondary importance. *Land–O–Nod,* 708 F.2d at 1340; *Mountaire Feeds,* 677 F.2d at 654. For "even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *World–Wide Volkswagen,* 444 U.S. at 294, 100 S.Ct. at 565.

Unilateral activity of those claiming a relationship with a nonresident defendant is not sufficient and "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). *See Mountaire Feeds,* 677 F.2d at 654; *Scullin Steel,* 676 F.2d at 314, *quoting, Aaron Ferer & Sons II,* 564 F.2d at 1215. For it is a defendant's contacts with the forum state that are of interest in determining whether personal jurisdiction exists, not its contacts with a resident of the forum. *Mountaire Feeds,* 677 F.2d at 655; *quoting, Aaron*

*Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n. 6 (8th Cir.1977); *Scullin Steel*, 676 F.2d at 313.
*Id.*, 747 F.2d at 455–456.

The Court has examined numerous cases on the issue now before it and finds that recent cases support the Court's conclusion. The United States Supreme Court case of *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) supports this finding. Although the Court in *Asahi* denied jurisdiction, it noted that there was no evidence that the foreign defendant "designed its product in anticipation of sales in California." *Id.*, 107 S.Ct. at 1033. In the present case, Honda R & D designed its product exclusively for Honda Motor and American Honda, a wholly owned subsidiary of Honda Motor, distributed thousands of ATVs designed by Honda R & D to Arkansas. There can be no doubt that Honda R & D designed its product in anticipation of sales in Arkansas.

Furthermore, it is not the mere existence of a parent-subsidiary relationship that the Court is considering in determining that there are sufficient minimum contacts. *See Clark Equipment Co. v. Keller*, 570 F.2d 778 (8th Cir.1978), *cert. denied* 439 U.S. 825, 99 S.Ct. 96, 58 L.Ed.2d 118 (1978). Another factor considered is that some of the directors hold offices with both the parent and subsidiaries. The Court also finds the language in *Warren v. Honda Motor Co., Ltd.*, 669 F.Supp. 365 (D.Utah 1987) to be persuasive.

> Honda Motor and Honda R & D present a unified image to the public. The design and manufacture of the ATC, although performed by separate entities, is a joint effort to place a certain product in a worldwide market. The benefits received by either entity is dependent on the performance of the other. Even if the parent corporation does not 'control' its subsidiary, the two are totally interdependent. Thus Honda Motor's purposeful acts of placing the product in a worldwide market, including the United States and Utah, can be attributed to its subsidiary corporation and designer, Honda R &

D. This is particularly true in this product liability action in which both the design and the manufacture of the product are specifically at issue.

*Id.* at 370.

And in *Wessinger v. Vetter Corp.*, 685 F.Supp. 769 (D.Kan.1987), the court stated:

> Second, Honda R & D indirectly placed the product into the stream of commerce. It regularly sold its designs to its parent, Honda, which manufactured motorcycles from the designs and sold the motorcycles to American Honda, another wholly-owned subsidiary, which distributed the motorcycles throughout the United States. Given the relationship among the corporations, Honda R & D undoubtedly knew that the finished products made from its design would regularly be sold in Kansas. (citation omitted). Because of the absence of evidence regarding the issue, we do not here hold that Honda R & D, Honda and American Honda are so tightly related that the subsidiaries are mere alter-egos of the parent. (citations omitted). Rather, we simply refer to the relationship to support our conclusion that Honda R & D knowingly, regularly, and indirectly placed its component product, the design, into the stream of commerce.

> \*    \*    \*    \*    \*    \*

> In summary, the court, applying the principles articulated by the Supreme Court in *Asahi*, 480 U.S. at 111–13, 107 S.Ct. at 1033, 94 L.Ed.2d at 105, finds that the interests of Wessinger in obtaining relief and of Kansas in protecting its citizens from injuries by inadequately designed products are substantial and outweigh any inconvenience or burden on Honda R & D. Thus, the court concludes that Honda R & D's contacts are sufficient to satisfy the minimum contacts test of *International Shoe.*

*Id.* at 777–778.

In summary, after applying the above principles, the Court finds that the interests of the plaintiff in obtaining relief and of Arkansas in obtaining relief from injuries by inadequately designed products are substantial and outweigh any inconven-

ience or burden on Honda R & D. Thus, the Court finds the exercise of jurisdiction over Honda R & D satisfies the Arkansas Long Arm Statute as well as due process.

The motion to dismiss filed by Honda R & D is hereby denied.