Leamon Thurman **GOULD**, Plaintiff,

v.

**EMPIRE STEEL TRADING CO., INC.**
**and P.T. Krakatau Steel, Defendants.**

**No. J–C–89–77.**

United States District Court,
E.D. Arkansas,
Jonesboro Division.

June 4, 1991.

---

Winslow Drummond, The McMath Firm, Little Rock, Ark., for plaintiff.

John Phelps, Jonesboro, Ark., for defendants.

### ORDER

ROY, District Judge.

Before the Court is the Motion to Dismiss filed on behalf of the defendant P.T. Krakatau Steel ("Krakatau"). Pursuant to request, a hearing was held on the Motion to Dismiss. Defendant Krakatau contends that it is not subject to the jurisdiction of this court by reason of lack of sufficient contacts with the state of Arkansas. Plaintiff contends that Krakatau is subject to the jurisdiction of this court by reason of Ark.Code Ann. § 16–4–101 C.1(d), which provides that a court may "exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's causing tortious injury in this state by an act or omission outside if he regularly does or solicits business, or engages in any other persistent course of conduct in this state or derives substantial revenue from goods consumed or services used in this state."

Defendant Krakatau is a corporation organized and existing under the laws of the Republic of Indonesia with its principal place of business in the city of Jakarta. Krakatau manufactures steel products, including steel plates and wire rods in Indonesia. Krakatau has no offices or other facilities of any kind outside of Indonesia. According to the affidavit of Soetor Mangoensoewargo, Marketing Director of Krakatau, Krakatau's manufacturing and sales are all carried out within Indonesia. Mr. Mangoensoewargo further states that Krakatau does not import or distribute products in the United States or make direct sales in the United States. Additionally, Mr. Mangoensoewargo states as follows:

4. Krakatau has no distributors or sales agents located in the State of Arkansas or anywhere else in the United States of America. All of Krakatau's sales are made within the Republic of Indonesia either directly to the customer or through an Indonesian sales agent.

5. Krakatau does not design or tailor its steel wire products for either the Arkansas or American market.

6. Krakatau does not have, and has never had, an office within the State of Arkansas. Krakatau has never had a salesman or an employee of any kind, who has made calls in the State of Arkansas or who has entered the State of Arkansas for any purpose. Upon information and belief, Krakatau has never placed a telephone call to the state of Arkansas, or sent a telex or a facsimile transmission to the State of Arkansas.

7. Krakatau has never placed an advertisement in a publication intended for circulation in the state of Arkansas or anywhere else in the United States.

8. Krakatau has never advised anyone in Arkansas concerning the use of its steel products.

9. Krakatau has never had any relationship whatsoever, commercial or otherwise, with the plaintiff, Leamon Thurman Gould, or his employer, Forbes Steel & Wire Corporation ("Forbes") of West Memphis, Arkansas, or anyone else in the State of Arkansas. Krakatau has never sold any products to either plain-

tiff or Forbes, nor has it ever had any contractual relationship whatsoever with either plaintiff or Forbes or anyone else in the State of Arkansas.

10. In mid–1987, Krakatau did make a sale of wire rods to Empire Steel Trading Co. ("Empire"), and Empire's answer in this case (paragraphs 5, 12) indicates that the wire rods in question were subsequently sold by Empire to Forbes. Krakatau had no knowledge of this transaction between Empire and Forbes and was not involved in it. The sale to Empire involved two single coils of approximately 850 kg. of prime quality wire rod. The sale was made f.o.b. Cigading, Indonesia. Payment was made by letter of credit to Bank Bumi Daya, Cilegon Branch, Indonesia. The unloading port was to be "mainport USA". Krakatau had no information that the shipment was to end up in Arkansas, at Forbes.

Defendant Krakatau states that even if the presence in Arkansas of wire rods manufactured by Krakatau constitutes a minimal contact with the state, exercise of jurisdiction over the Indonesian corporation would offend traditional notions of fair play and substantial justice.

Plaintiff states that certain statements or assertions made by Mr. Mangoensoewargo are misleading. For example, plaintiff argues that while the affiant states that Krakatau "does not design or tailor its steel wire products for either the Arkansas or American market," in August 1986, Krakatau placed an advertisement in the "Metal Bulletin," published in the United Kingdom and distributed worldwide, including in the United States. In that advertisement, Krakatau claimed that its products complied with international standards which included the "ASTM" [American Society for the Testing of Metals]. Plaintiff further claims that in June of 1987, Krakatau's General Manager of Marketing met with one or more representatives of Empire in San Francisco, California. In the following month Soetoro Mangoensoewargo, Mar-

keting Director of the company, met with Empire Steel Trading Company, Inc. ("Empire") people in New York, this being described as "a social visit." In June 1988, Mr. T. Aribowo, Krakatau's president, attended a general steel conference in New York where Empire representatives were also present.

In his brief, plaintiff also states that on November 6, 1987, Krakatau, as seller, and Empire, as buyer, entered into a contract for the sale of approximately 14,000 metric tons of Krakatau products to be delivered by vessel to the United States ports of Houston, Tampa, and New Orleans. From the total shipment, approximately 3,000 metric tons of Krakatau low carbon continuous cast wire rods reached West Memphis, Arkansas, on March 14, 1988, constituting the Krakatau manufactured and packaged product which allegedly caused Mr. Gould's injuries. The total cost of the shipment to Forbes Steel at West Memphis exceeded $900,000.00, revenue shared by the manufacturer Krakatau and an unknown percentage by Empire as its broker.[1] According to a response to plaintiff's interrogatory, Empire states that to date Empire has chartered six different vessels to carry a total of approximately 59,000 metric tons of Krakatau steel products to the United States.

The plaintiff stipulates that there has been no contact, as such, between Krakatau and the state of Arkansas. Plaintiff contends, however, that the record reflects advertising by Krakatau for sale of products within the United States, the physical presence of Krakatau officers within the United States for the purpose of soliciting business in this country, and substantial and continual sales of Krakatau products since November, 1987. The Court is of the opinion that even taking the facts as stated by plaintiff to be true, the motion to dismiss should be granted.

█ In determining this issue, the Court's inquiry consists of two parts. First, the Court must decide whether the

---

**1.** The defendant, in its reply brief, disputes the figures submitted by plaintiff. Although the plaintiff's proof on this issue is sketchy, the

Court will nevertheless accept the plaintiff's facts for purposes of the motion.

facts presented satisfy the requirements of Arkansas' long arm statute. *Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 452 (8th Cir.1984); *Sales Service, Inc. v. Daewoo International (America) Corp.*, 719 F.2d 971, 972 (8th Cir.1982); *Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 312 (8th Cir.1982). The Court must then determine if the exercise of personal jurisdiction is consistent with due process. *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651 (8th Cir.1982). "The Arkansas Supreme Court has interpreted the reach of the Arkansas long-arm statute to be coextensive with that permitted by due process." *Id.*, 677 F.2d at 653. Therefore, in determining the reach of the Arkansas long arm statute, the Court must consider the limits of the due process clause as set out in United States Supreme Court cases and various federal circuit court of appeals cases. It is always the plaintiff who must establish jurisdiction by a preponderance of the evidence. The burden never shifts to the objecting party. *Newhard, Cook & Co. v. Inspired Life Centers, Inc.*, 895 F.2d 1226, 1228 (8th Cir.1990).

■ There is no question that the tortious injury occurred within the state of Arkansas by an act or omission outside this state. However, the facts do not support a finding that defendant Krakatau regularly conducts business or solicits business in the state of Arkansas. Nor does Krakatau engage in any persistent course of conduct in this state. At most, Krakatau has conducted a limited amount of business with Empire, and that business was not conducted in the state of Arkansas. Furthermore, it was only at Empire's direction that the coils arrived in Arkansas. Even in Empire's answers to Interrogatories submitted by the plaintiff, Empire only stated that Empire informed defendant Krakatau that the ultimate destination of the shipment was the United States of America.

Receipt by Forbes Steel at West Memphis of a $900,000.00 shipment, the cost of which was allegedly shared by Krakatau and Empire, may tend to support the argument that Krakatau did receive substantial revenue from goods consumed or services used in this state. However, since the Arkansas Supreme Court has interpreted the reach of the long-arm statute to be coextensive with that permitted by due process, the Court must further inquire as to whether exercise of jurisdiction would violate due process. And, as stated in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), "the constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474, 105 S.Ct. at 2183, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In *Burger King Corp.*, the United States Supreme Court stated that jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2184. In *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), a case heavily relied upon by the defendant Krakatau, the Supreme Court held that the "substantial connection" referred to in *Burger King*, between the defendant and the forum State necessary for a finding of minimum contacts must come about by *"an action of the defendant purposefully directed toward the forum State."* (citation omitted). *Asahi*, 480 U.S. at 112, 107 S.Ct. at 1032. The Court in *Asahi* further stated that the placement of a product into the stream of commerce, "without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* The Court held further:

Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as

the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.*

The Supreme Court in *Burger King Corp.* stated that "this 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person,'" (citations and footnote omitted). *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183. The Court further stated that jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.*

The Eighth Circuit has developed guidelines to aid in analyzing the sufficiency of Krakatau's contacts with the state of Arkansas. The Court is to consider:

(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Newhard, Cook & Co.*, 895 F.2d at 1228.

The Court finds that the language in *Asahi* and *Burger King Corp.* as well as *Newhard, Cook & Co.* compel a finding that the motion to dismiss should be granted. There is nothing in the record to indicate that defendant Krakatau designed the product for the market in Arkansas, that defendant advertised in Arkansas, that defendant established channels for providing regular advice to customers in Arkansas, or marketed the product through a distributor who has agreed to serve as the sales agent in Arkansas. There is nothing in the record to indicate that Krakatau knew or anticipated that the sale of the rods would end up in Arkansas. In fact, the affidavit

of Soetoro Mangoensoewargo indicates that Krakatau had no information that the shipment to West Memphis, Arkansas was to be directed there. There is simply nothing in the record to indicate that the contacts proximately result from actions by the defendant itself which create a "substantial connection" with Arkansas.

This Court's holding in *Hawes v. Honda Motor Company, Ltd.*, 738 F.Supp. 1247 (E.D.Ark.1990) is not inconsistent with this holding. In *Hawes,* the Court referred to the language in *Asahi,* where the Supreme Court noted that there was no evidence that the foreign defendant "designed its product in anticipation of sales in California." This Court concluded in *Hawes* that Honda R & D designed its product exclusively for Honda Motor and American Honda, a wholly owned subsidiary of Honda Motor, who distributed in Arkansas thousands of ATVs designed by Honda R & D. This Court found that based upon the facts before it, there could be no doubt that Honda R & D designed its product in anticipation of sales in Arkansas. In the present case, no evidence has been presented to the Court to indicate that Krakatau designed its product in anticipation of sales in Arkansas, or purposely directed its actions toward Arkansas.

As stated earlier, pursuant to request, the Court conducted a hearing on the motion to dismiss, at which time counsel for the plaintiff argued that the Arkansas long arm statute does not require any purposeful conduct, or any scienter. However, since the Arkansas Supreme Court has interpreted the reach of the Arkansas long-arm statute to be coextensive with that permitted by due process, *Mountaire,* 677 F.2d at 653, the Court cannot ignore language in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), where the Supreme Court refers to a defendant who "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Further, in *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1032, the Supreme Court referred to the defen-

dant who "designed its product in anticipation of sales in California."

Even assuming *arguendo* that Krakatau could be said to have purposely availed itself of the privilege of conducting activities in Arkansas, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. at 2184. The Supreme Court in *Burger King Corp.* added:

> Nevertheless, minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. (citations omitted). As we previously have noted, jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent. (citations omitted).

*Id.* at 477–478, 105 S.Ct. at 2185.

The Court is of the opinion that based upon the legal authority cited herein, to exercise jurisdiction over the defendant Krakatau would be to stretch the limits of the due process clause further than that intended by the Eighth Circuit Court of Appeals and the United States Supreme Court, and would violate the principles of fair play and substantial justice.

Based upon the foregoing, the court hereby grants the Motion to Dismiss defendant Krakatau.